STATE OF NORTH CAROLINA v. THOMAS L. NICCUM

No. 21

(Filed 11 October 1977)

**1. Habeas Corpus § 3; Criminal Law § 156— life imprisonment imposed—habeas corpus denied—certiorari in Supreme Court**

G.S. 7A-27(a), G.S. 15-180.2, and App. R. 21(b) are applicable to petitions for certiorari to review judgments in habeas corpus proceedings involving the restraint of prisoners under sentences of death or life imprisonment; therefore, defendant, who was restrained under a judgment imposing imprisonment for life and whose application for a writ of habeas corpus was denied by the superior court, should have filed his petition for certiorari in the Supreme Court, not in the Court of Appeals.

**2. Criminal Law § 134.4— death or life imprisonment mandatory — youthful offender statutes inapplicable**

> Neither Article 3A (repealed) nor 3B of N.C. Gen. Stats. Ch. 148 providing for Programs for Youthful Offenders was intended to apply to convictions or pleas of guilty of crimes for which death or a life sentence is the mandatory punishment.

ON certiorari to review the judgment of *Peel, J.*, rendered at the 6 January 1977 Session of the Superior Court of CRAVEN County in a habeas corpus proceeding.

Petitioner, Thomas L. Niccum, is presently in the custody of the Department of Correction, serving a sentence in the State Prison System under the terms of a judgment entered and commitment issued thereon in case No. 72 Cr 6664 on 7 November 1972 by the Superior Court of Craven County.

On 6 November 1972 petitioner was 17 years of age. On that date, after having been fully apprised of his rights by both his court-appointed counsel and the presiding judge, the Honorable Walter W. Cohoon, he freely, voluntarily and understandingly entered a plea of guilty to a charge of first degree murder. Upon this plea the court entered the following judgment: "It is adjudged that the defendant be imprisoned as required by law, for the term of his natural life in the State prison, assigned to do labor under the supervision of the North Carolina Department of Correction. The court recommends that this defendant be placed in some youthful camp, segregated from other older and long-time prisoners."

On 21 December 1976, pursuant to N.C. Gen. Stats., ch. 17, § 17-3 *et seq.* (1975), petitioner applied to Judge Hamilton Hobgood for a writ of habeas corpus to inquire into the legality of his imprisonment. In addition to the basic facts summarized above he alleged: (1) that under the judgment upon which he was committed, by virtue of N.C. Gen. Stats., ch. 148, Art. 3A (Cum. Supp. 1971) (Article 3A), he is "a committed youthful offender"; (2) that the life sentence imposed upon him "is inconsistent with G.S. 148-49.4 and, more particularly, G.S. 148-49.8(b), and is therefore illegal"; and (3) that "having been held in custody for a term exceeding four years [he] is now and has been illegally in custody since September 9, 1976."

On 6 January 1977 Judge Peel conducted a hearing as provided by G.S. 17-32, Judge Hobgood having transferred petitioner's application to the judge presiding in Craven County. Judge Peel ruled as a matter of law (1) that under the judgment entered by Judge

Cohoon on 7 November 1972 petitioner was not a "committed youthful offender," and (2) that the provisions of G.S. 148-49.1 *et seq.* had no application to offenses for which imprisonment for life is the mandatory sentence. Upon "the entire record" he concluded that petitioner "as a matter of law is not entitled to be discharged from the custody of the North Carolina Department of Correction." Whereupon he denied petitioner's application for the writ of habeas corpus.

On 21 March 1977 the Court of Appeals denied petitioner's application for a writ of certiorari to review Judge Peel's judgment. He then sought the writ from this Court. His petition was allowed on 3 May 1977.

*Attorney General Rufus L. Edmisten; Associate Attorney Patricia B. Hodulik for the State.*

*Pearson, Malone, Johnson, DeJarmon, and Spaulding and Clayton, Myrick & Oettinger for petitioner appellant.*

SHARP, Chief Justice.

Preliminarily, we note the procedural posture of this case. Niccum first petitioned the Court of Appeals to issue its writ of certiorari to the superior court to review Judge Peel's judgment decreeing the legality of his imprisonment and remanding him to the custody of the Commissioner of Correction to complete his sentence. Upon the Court of Appeals' denial of his petition, Niccum filed a second and substantially identical petition for certiorari with this Court.

In this jurisdiction the rule is firmly established that no appeal lies from an order made in a habeas corpus proceeding instituted under N.C. Gen. Stats., ch. 17 by a prisoner to inquire into the legality of his restraint. The remedy, if any, is by petition for certiorari addressed to the sound discretion of the appropriate appellate court. *In re Palmer,* 265 N.C. 485, 144 S.E. 2d 413 (1965); *In re Renfrow,* 247 N.C. 55, 100 S.E. 2d 315 (1957). Such a petition should be filed with the clerk of the appellate court to which an appeal of right might have been taken from the judgment imposing the sentence which is the subject of inquiry in the habeas corpus proceeding. In this proceeding the petition for certiorari to review Judge Peel's judgment should have been filed in the Supreme Court and not the Court of Appeals.

G.S. 7A-27(a) (Cum. Supp. 1975) provides: "From any judgment of a superior court which includes a sentence of death or imprison-

ment for life, unless the judgment was based on a plea of guilty or nolo contendere, appeal lies directly to the Supreme Court." G.S. 15-180.2 (1975) denies the right of appeal to a defendant who has pled guilty or nolo contendere to a charge pending in the superior court but allows him to petition the Appellate Division for review by certiorari. "In the event the sentence imposed is life imprisonment the petition shall be directed to the Supreme Court; in all other cases it shall be directed to the Court of Appeals."

Obviously neither G.S. 7A-27(a) nor G.S. 15-180.2 refers to the appellate review of a judgment entered in a habeas corpus proceeding such as this. G.S. 7A-27(a) refers to appeals entered at the time the sentence is imposed or within the time prescribed by G.S. 1-279 (1975), and G.S. 15-180.2 refers to petitions for certiorari filed "without unreasonable delay" after the sentence has been imposed upon the plea. App. R. 21(b).

Rule 21(b) of the Rules of Appellate Procedure provides: "Application for the writ of certiorari shall be made by filing a petition therefor with the clerk of the court of the appellate division to which appeal of right might lie from a final judgment in the cause by the tribunal to which issuance of the writ is sought." 287 N.C. 679, 728 (1975). This rule, *ipsissimis verbis*, cannot be related to petitions for certiorari to obtain appellate review of a judgment in a habeas corpus proceeding determining the legality of a prisoner's restraint for it designates the court to be petitioned as the one to which an *appeal of right* could have been taken from the judgment imposing the sentence, and review of habeas corpus proceedings can be had only by certiorari.

[1] By analogy, however, G.S. 7A-27(a), G.S. 15-180.2 and App. R. 21(b) are logically applicable to petitions for certiorari to review judgments in habeas corpus proceedings involving the restraint of prisoners under sentences of death or life imprisonment, and we make that application, G.S. 7A-32(b) (1969). The judgment under which Niccum is restrained is one imposing imprisonment for life. The Supreme Court, therefore, is the Court in which he should have filed his petition for certiorari—not the Court of Appeals. This error, however, has caused no unreasonable delay, and we have concluded that a definitive decision of the questions presented by Niccum's petition for certiorari would serve the public interest and aid the superior court judges to whom applications for writ of habeas corpus are addressed.

Niccum was 17 years old when, on 6 November 1972, he pled guilty to murder in the first degree and Judge Cohoon sentenced

him to imprisonment for life in the State's prison "as required by law." He now contends: (1) that under the terms of that judgment he is "a committed youthful offender" because the judge (a) "recommended" in the judgment that he "be placed in some youthful camp, segregated from other and long term prisoners" and (b) failed to incorporate in the judgment a specific finding that he would "not derive benefit from treatment and supervision" pursuant to Article 3A; and (2) that having served over four years, G.S. 148-49.8 mandates his conditional release.

For the reasons hereinafter stated, we conclude that the contentions upon which petitioner bases his claim for release are without merit, and that Judge Cohoon correctly construed Article 3A as having no application to youthful offenders committing crimes for which the mandatory punishment was death or life imprisonment. Accordingly, we affirm Judge Peel's judgment remanding him to the custody of the State Department of Correction.

We begin our analysis of petitioner's contentions with a consideration of the pertinent provisions of Article 3A as it was written in 1972.

In summary, the purposes of Article 3A as stated in G.S. 148-49.1 were to improve the chances of rehabilitating youthful offenders: (1) by segregating them, as far as practicable, from older and more experienced criminals; and (2) by providing the court with "an additional sentencing possibility" to be used for correctional punishment and treatment in cases where, in its opinion, a youthful offender required imprisonment only for the time necessary for the Board of Paroles to determine his suitability for a return to supervised freedom. Article 3A, *ipsissimis verbis*, could have no application to capital cases.

As defined in Article 3A, "a 'youthful offender' is a person under the age of 21 at the time of conviction, and a 'committed youthful offender' is one committed to the custody of the Commissioner of Correction under the provisions of this article." G.S. 148-49.2.

Upon a youthful offender's conviction of an offense punishable by imprisonment G.S. 148-49.4 authorized the court, "in lieu of the penalty of imprisonment otherwise provided by law," to sentence him to the custody of the Commissioner of Correction for supervision and treatment pursuant to Article 3A until discharged at the expiration of the maximum term imposed or released conditionally or unconditionally by the Board of Paroles. If the youthful offender

was not put on probation at the time of his commitment the court was required to fix a maximum term, not to exceed the limit otherwise prescribed by law for the offense of which he was convicted. The statute provided that "[w]hen the maximum permitted penalty for the offense is imprisonment for one year or longer, the maximum term imposed shall not be for less than one year." However, it further provided that "[i]f the court shall find that the youthful offender will not derive benefit from treatment and supervision pursuant to this Article [3A], then the court may sentence the youthful offender under any other applicable penalty provision."

G.S. 148-49.8(a) specified that when the Commissioner of Correction deemed a committed youthful offender ready for conditional release under supervision he should report his recommendations to the Board of Paroles. Notwithstanding, the Board of Paroles was authorized to release a committed youthful offender under supervision at any time after reasonable notice to the Commissioner. It is section (b) of G.S. 148-49.8, however, upon which petitioner bases his hope of release. This section provided: "A committed youthful offender *shall be released conditionally under supervision on or before the expiration of four years from the date of his commitment* and may be discharged unconditionally before the expiration of the maximum term imposed." (Emphasis added.) Section (c) permitted the Board of Paroles to revoke or modify any of its orders respecting a committed youthful offender except an order of unconditional discharge.

Having briefed Article 3A in the preceding paragraphs we first note that Judge Cohoon did not purport to commit petitioner, as provided in G.S. 148-49.4, "to the custody of the Commissioner of Correction for treatment and supervision under this Article as a committed youthful offender." Had he so intended the learned judge would not have deemed it necessary to *recommend* that "this defendant be placed in some youth camp . . .," for G.S. 148-49.7 spelled out the "treatment of committed youthful offenders" and, *inter alia*, required the Commissioner of Correction to segregate them from other offenders "according to their needs . . . insofar as practical."

[2]  In his judgment and commitment Judge Cohoon recited that he was sentencing Niccum to imprisonment "*as required by law* for the term of his natural life in the State Prison assigned to do labor under the supervision of the North Carolina Department of Correction." (Emphasis added.) In other words, he sentenced and committed Niccum just as he would have any adult defendant who, at that time, had pled guilty to felony murder. The inclusion of the ex-

planatory phrase, "required by law," denotes that Judge Cohoon construed Article 3A as having no application to youthful offenders who had committed a crime for which the punishment mandated by the General Assembly was either death or life imprisonment. We agree with this construction.

In reaching the conclusion that Article 3A is inapplicable to Niccum's sentence, we have considered the .General Assembly's repeated manifestations that it intended to require the maximum punishment of death or life imprisonment for first degree murder. When Article 3A was enacted in 1967, N.C. Sess. Laws, ch. 996, § 10, the punishment for first degree murder in this State was death except in two situations when the punishment would be life imprisonment: When a plea of guilty was accepted by the State and approved by the judge (G.S. 15-162.1 (1965 Cum. Supp.)) and when the jury, at the time of rendering its verdict so recommended. (G.S. 14-17 (1969)).

On 25 March 1969 G.S. 15-162.1 was repealed by 1969 N.C. Sess. Laws, ch. 117 after the United States Supreme Court had held that sentences of death could not constitutionally be imposed under G.S. 14-17 for first degree murder committed while a statute allowed a defendant to plead guilty to a capital crime and receive a life sentence. *See State v. Anderson*, 281 N.C. 261, 188 S.E. 2d 336 (1972).

In June 1972 the decision of the United States Supreme Court in *Furman v. Georgia*, 408 U.S. 238, 33 L.Ed. 2d 346, 92 S.Ct. 2726, invalidated the death penalty in North Carolina on the ground that it could not be constitutionally inflicted if the applicable statute (G.S. 14-17) authorized either the judge or jury to impose it as a matter of discretion.

Thereafter, until the decision of this Court in *State v. Waddell*, 282 N.C. 431, 194 S.E. 2d 19, decided 18 January 1973, life imprisonment was the only permissible punishment for first degree murder in this State. It was during this interim that Niccum pled guilty to first degree murder and received a sentence of life imprisonment.

By the enactment of 1973 N.C. Sess. Laws, ch. 1201, sec. 1, the General Assembly rewrote G.S. 14-17. By eliminating the discretionary provision condemned by *Furman v. Georgia, supra*, which had permitted the jury to fix the punishment at life imprisonment, it mandated the death penalty for all persons convicted of the crime. Section 1 also increased the maximum punishment for second degree murder from 30 years to life imprisonment. Section 5 provides that all prisoners shall be eligible to have their cases considered for parole after they have served a fourth of their sentence,

and that any prisoner serving a life sentence shall be eligible for such consideration after he has served 20 years. In Section 6 by an amendment to G.S. 14-2 (1969) it provided that "a sentence of life imprisonment shall be considered as a sentence of imprisonment for a term of 80 years in the State's Prison."

On 1 June 1977 the General Assembly rewrote G.S. 14-17 to make the punishment for murder in the first degree "death or imprisonment for life in the State's prison as the court shall determine pursuant to G.S. 15A-2000." 1977 N.C. Sess. Laws, ch. 406. G.S. 15A-2000 outlined the proceedings and listed some of the "aggravating" and "mitigating circumstances" which the jury should consider in determining whether the punishment should be death or life imprisonment. Among the mitigating circumstances militating in favor of a life sentence is "[t]he age of the defendant at the time of the crime." G.S. 15A-2000(f)(7).

Having consistently mandated death or life imprisonment for first degree murder, and having made a prisoner serving a life sentence eligible for parole when he has served 20 years of his sentence, it is inconceivable to us that the General Assembly intended to liberalize the punishment to the extent authorized by the Programs for Youthful Offenders contained in N.C. Gen. Stats. ch. 148. If Article 3A were held applicable to youthful offenders guilty of murder in the first degree, G.S. 148-49.4 would have required the judge, if he did not suspend the imposition or execution of a sentence of life imprisonment and place the offender on probation, to fix a maximum term not to exceed the limit otherwise prescribed by law. Obviously the court could not impose a term in excess of life imprisonment! However, G.S. 148-49.4 also provided that "[w]hen the maximum permitted penalty for the offense is imprisonment for one year or longer, the maximum term imposed shall not be for less than one year."

Thus, according to petitioner's construction of Article 3A, a superior court judge, in his discretion, could have put any youthful offender convicted of first degree murder *on probation*, or sentenced him as a committed youthful offender from one year to life imprisonment. Further, notwithstanding the trial court's imposition of a life sentence, under G.S. 148-49.8 the Board of Paroles could have released the committed youthful offender at any time after reasonable notice to the Commissioner of Correction; and it was required to release him conditionally under supervision on or before the expiration of four years!

In civilized society, first degree murder is universally regarded as one of the most heinous of all crimes. We cannot believe that the General Assembly of this State ever contemplated that any person guilty of first degree murder might be placed on probation or discharged, either conditionally or unconditionally, after serving only one year of a life sentence. Nor can we be persuaded that it intended to *require* his conditional release under supervision "on or before the expiration of four years from the date of his commitment."

After its enactment in 1967, the General Assembly made no substantive changes in Article 3A prior to the enactment of 1977 N.C. Sess. Laws, ch. 732. This act, which became effective while this case was pending in this Court (on 1 October 1977), repealed Article 3A (G.S. 148-49.1 to G.S. 148-49.9) and, in lieu thereof added to N.C. Gen. Stats. ch. 148 a new article, 3B, to be codified as G.S. §§ 148-49.10 to G.S. 148-49.16. The purpose of new Article 3B as stated in G.S. 148-49.10 is the same purpose stated in G.S. 148-49.1 of the old Article 3A, and any rights accrued by persons under Article 3A remain unaffected. G.S. 148-49.11. Since we hold that petitioner acquired no rights under Article 3A there are none to be affected by Article 3B. However, a comparison of the two articles will corroborate our conclusion that they were not intended to apply to youthful offenders guilty of first degree murder.

As used in Article 3B "a 'youthful offender' is a person under 21 years of age in the custody of the Secretary of Correction. A 'committed youthful offender' is a youthful offender who shall have the benefit of early release under the provisions of G.S. 148-49.15." G.S. 148-49.11. To the extent practicable, considering the needs of the youthful offenders and the resources of the prison system, G.S. 148-49.12 directs the Secretary of Correction, *inter alia,* to house youthful offenders separate from prisoners over 21 years of age and to provide specified methods of treatment. Under section (c) of this statute the Secretary of Correction may authorize a youthful offender, "under prescribed conditions," to leave his place of confinement "unaccompanied by a custodial agent for a prescribed period of time for any purpose consistent with the public interest."

With reference to sentencing committed youthful offenders, G.S. 148-49.14 provides: "As an alternative to a sentence of imprisonment as is otherwise provided by law, when a person under 21 years of age is convicted of an offense punishable by imprisonment and the court does not suspend the imposition or execution of sentence and place him on probation, the court may sentence such

person to the custody of the Secretary of Correction for treatment and supervision as a committed youthful offender. *At the time of commitment the court shall fix a maximum term not to exceed the limit otherwise prescribed by law for the offense of which the person is convicted or 20 years, whichever is less. When the maximum permitted penalty for the offense is imprisonment for one year or longer, the maximum term imposed shall be for not less than one year.* If the court shall find that a person under 21 years of age should not obtain the benefit of release under G.S. 148-49.15, it shall make such 'no benefit' finding on the record." (Emphasis added.)

With reference to the parole of committed youthful offenders, G.S. 148-49.15 provides that it shall not be necessary for a committed youthful offender to have served one-fourth of his sentence before becoming eligible for parole. It also authorizes the Parole Commission, at any time after reasonable notice to the Secretary of Correction, to parole a committed youthful offender under supervision of agents and employees of the Department of Correction. The Secretary of Correction "may also recommend such action to the Parole Commission." This section omitted the requirement contained in its counterpart in Article 3A (G.S. 148-49.8(b)) that a "committed youthful offender shall be released conditionally under supervision on or before the expiration of four years from the date of his commitment and may be discharged unconditionally before the expiration of the maximum term imposed."

The foregoing changes in the law substantiate our view that the Programs for Youthful Offenders cannot logically be related to youthful offenders serving mandatory life sentences. Under G.S. 15A-2000(f)(7) the age of a person guilty of first degree murder is only a mitigating factor to be considered in determining whether the punishment should be death or life imprisonment. Yet, under petitioner's argument the age of the offender, if less than 21 years, could reduce the maximum sentence which could be imposed to 20 years (G.S. 148-49.14). By 1973 N.C. Sess. Laws, ch. 1201, § 5, amending G.S. 148-58, the General Assembly made a first degree murderer eligible for *consideration* for parole after he serves 20 years; however, if Article 3B applied to a youthful offender guilty of first degree murder, he would be eligible for parole at any time (G.S. 148-49.15).

We note that a few jurisdictions have concluded that their respective legislative bodies intended their youthful offender statutes to apply to mandatory life sentences. *See United States v. Howard*, 449 F. 2d 1086 (C.A.D.C. 1971); *People v. Reyes*, 60 Cal.

App. 3d 227, 131 Cal. Rptr. 340 (1976); *United States v. Stokes*, 365 A. 2d 615 (D.C. App. 1976). Nevertheless, until the General Assembly specifically makes Article 3A and 3B applicable to youthful offenders who have been convicted or have judicially admitted their guilt of first degree murder, we remain unconvinced that the General Assembly intended to authorize superior court judges to fix the punishment for a first degree murderer under 21 years of age at not less than one nor more than 20 years and to render him eligible for parole at any time. To withdraw sentencing discretion with one hand and then restore it with another *sub silentio* under the guise of a youthful offender program appears utterly incongruous, and we do not attribute such an intent to the General Assembly.

We hold that neither Article 3A (repealed) nor 3B of N.C. Gen. Stats. ch. 148 was intended to apply to convictions or pleas of guilty of crimes for which death or a life sentence is the mandatory punishment. Petitioner Niccum, therefore, is not a committed youthful offender entitled to the benefits of the Youthful Offenders Program.

This holding makes it unnecessary to decide the question debated in the briefs, whether the decision of the Court of Appeals in *State v. Mitchell*, 24 N.C. App. 484, 211 S.E. 2d 645, bore upon Niccum's right to conditional release. This case, decided 5 February 1975, held that the trial judge could not sentence a youthful offender as an older criminal without specifically finding he would receive no benefit from treatment and supervision as a "committed youthful offender." We note, however, that since 1 October 1977 such a finding is mandated by 1977 N.C. Sess. Laws, ch. 732, art. 3B (G.S. 148-49.14), quoted above.

The judgment of Judge Peel is affirmed, and this cause is remanded to the Superior Court of Craven County.

Affirmed.