STATE OF NORTH CAROLINA v. KENNETH MATHIS

No. 35

(Filed 15 December 1977)

**1. Criminal Law § 134.4— Youthful Offender statutes—mandatory death or life imprisonment crimes**

The Youthful Offender statutes, former Article 3A of G.S. Ch. 148 and its successor, Article 3B, do not apply to persons convicted of crimes for which death or a life sentence is the mandatory punishment.

State v. Mathis

## 2. Rape § 7— life sentence substituted for death penalty

A sentence of death imposed upon a defendant convicted of first degree rape is vacated and a sentence of life imprisonment is substituted therefor pursuant to the provisions of Ch. 1201, § 7, of the Session Laws of 1973.

## 3. Constitutional Law § 48— failure of original counsel to perfect appeal—absence of prejudice

Defendant was not prejudiced by failure of his original court-appointed counsel to perfect his appeal to the Supreme Court within the time allowed therefor where the Court allowed defendant's petition for certiorari filed by his present court-appointed counsel and fully reviewed the case in the same manner and to the same extent as if there had been no failure by the original counsel to perfect the appeal.

## 4. Criminal Law § 91.6— motion for continuance to obtain additional psychiatric examination

The trial court in a rape case did not abuse its discretion in the denial of defendant's motion for a continuance, made when the case was called for trial, so that a second psychiatric examination of defendant could be arranged where there was no indication of any basis for a belief that further psychiatric examination would produce results favorable to defendant.

## 5. Constitutional Law § 48— effective assistance of counsel—failure to demand voir dire on in-court identification

Failure of defense counsel in a rape case to demand a voir dire examination of the victim prior to her in-court identification of defendant did not constitute ineffective assistance of counsel so as to warrant the granting of a new trial to defendant where the record indicates no basis for the belief that a voir dire examination would have tainted the in-court identification; all the evidence shows that the victim was seized on a brightly lighted street and was dragged a short distance into a wooded area which was rather well lighted, there was a full moon, she was in a face to face encounter with her assailant for some 45 minutes, and defendant was found alone at the crime scene some 15 minutes later sitting or lying on the victim's clothing; and nothing in the record suggests that defendant ever told his trial counsel or anyone else that he was not the assailant.

## 6. Constitutional Law § 48— effective assistance of counsel—reasonable possibility of different result

A new trial will not be granted because of the alleged ineffectiveness of court-appointed trial counsel where nothing in the record, brief or oral argument indicated a reasonable possibility that any different, and legitimate, tactic or procedure by such trial counsel would have produced in the trial of this case a verdict more favorable to the defendant.

## 7. Criminal Law § 5— plea of not guilty—evidence of insanity

Evidence of defendant's insanity, if otherwise competent, would have been admissible under defendant's plea of not guilty entered after the court rejected defendant's plea of "not guilty by reason of mental irresponsibility and insanity."

APPEAL by defendant from *Kirby, J.,* at the 31 May 1976 Regular Criminal Session of BURKE.

Upon an indictment, proper in form, the defendant was tried for and found guilty of rape in the first degree. He was sentenced to death in conformity with G.S. 14-21, sentence being imposed prior to the decision of the Supreme Court of the United States in *Woodson v. North Carolina,* 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed. 2d 944 (1976).

The evidence for the State consisted of the testimony of the victim, her personal physician, who examined her in the emergency room of the hospital in Morganton shortly after the alleged offense, and a detective of the Morganton Police Department. The defendant did not testify and offered no evidence except certain photographs of the scene of the alleged offense, which were placed in evidence by his counsel during cross-examination of the prosecuting witness. The evidence for the State was to the following effect:

The prosecuting witness was 21 years of age, married and the mother of one child. She and her husband resided in Morganton and were both students in school. They did not own an automobile and, in their joint effort to save money, they walked, when possible, to their various destinations.

She was employed at McDonald's Restaurant in Morganton, two or three miles from her home, and got off work at about 9:30 p.m. on 14 February 1976. She began to walk home, there being a full moon and ample street lights along her route. After she had been walking 15 or 20 minutes, she was passing a small wooded area. The defendant, not previously known to her but positively identified by her in court, jumped out from behind some bushes, seized her from behind, placed his hand over her mouth and dragged her down a slight incline into the woods, telling her, "If you scream or try to get away I will kill you." He struck her three times in the face, damaging her eye so that it was swollen shut upon her arrival at the hospital, loosening the cartilage in her nose, and knocking a number of her teeth loose. Although she is only five feet, two inches, tall and weighs only 110 pounds, she tried to fight the defendant off by striking him with her pocketbook which he wrenched away from her and threw down.

She continued to resist but he forced her to the ground, ripped off most of her clothing and, after physically forcing her to commit an unnatural sex act, had intercourse with her twice, interspersing these offenses with another unnatural sexual act, which he compelled her to commit by physical force, and then forced into her private parts a beer bottle which he had found at the scene. The defendant had a slight odor of alcohol about him but did not appear to the prosecuting witness to be drunk.

These acts were spread over a period of approximately 45 minutes. The defendant then appeared to fall asleep and his victim slipped away from him very meagerly clad, the defendant sitting or lying upon the remainder of her clothing which he had removed from her. She ran to a nearby house, the residents of which called the police who arrived promptly. She told the detective in charge what had happened and described the location of the offense. He, being familiar with the area, dispatched other officers thereto and he and the prosecuting witness soon followed them. Upon their arrival at the scene of the offense, the officers found the defendant still there, sitting or lying upon articles of the clothing he had stripped from the prosecuting witness.

Almost immediately, the prosecuting witness and her police officer escort arrived at the scene and she, without any prompting by the officers, told them the defendant was the man who had attacked her, she exhibiting substantial fright and distress at the sight of him. The prosecuting witness was then taken to the hospital and examined by her personal physician who testified as to her injuries and as to the results of his examination, these corroborating her testimony. Not more than 15 minutes elapsed between her flight from the scene of the attack and her return thereto in company of her police escort.

Other than the attack upon the imposition of the sentence to death, the defendant's principal contention on appeal is that his court-appointed counsel did not give him adequate representation. With reference to this contention, the record shows:

The offense was committed 14 February 1976. Counsel was duly appointed 17 February. Immediately upon his appointment, counsel conferred with the defendant and again conferred with him in the jail, in the presence of the defendant's aunt on 23 February. A preliminary hearing was held on 25 February and

probable cause was found. Counsel attended this hearing and cross-examined the prosecuting witness, no other witness being called.

On 8 March, counsel filed with the Superior Court a detailed motion that the defendant be transferred to Dorothea Dix Hospital in Raleigh for psychiatric observation and examination to determine his mental capacity to plead to the then anticipated bill of indictment and to assist his counsel in preparing his defense. This motion was granted and the defendant was so examined at Dorothea Dix Hospital. The record does not set forth the full report of the examining psychiatrist, Dr. Groce, but shows that the report was filed with the court with copies to the District Attorney and to counsel for the defendant. The record further shows that this report, which was not introduced in evidence before the jury, stated that, in the opinion of the examining psychiatrist, the defendant was competent to stand trial, that he understood the nature of the charge against him and the possible penalties in the event of conviction, that he could work with his attorney to prepare his defense and that while he had advised the examining psychiatrist that he was drinking at the time in question, which may have decreased his inhibitions and judgment, "It is doubtful that this was severe enough to render him unable to know the difference in right and wrong or the nature and consequences of his behavior." It further stated: "Psychiatric diagnosis: without psychosis, not insane; habitual excessive drinking." The record further shows that Dr. Groce, the examining psychiatrist, was present in court during the trial but was not called as a witness.

During the approximately nine weeks between the return of the defendant from the hospital and the trial, defendant's counsel conferred on several occasions with the District Attorney in an unsuccessful effort to persuade the State to accept a plea of guilty to rape in the second degree and also endeavored unsuccessfully to obtain from the Military Personnel Record Center in St. Louis, Missouri, specific information concerning the circumstances under which the defendant was discharged from the Army in July, 1974, that discharge being a "general discharge under honorable conditions." As counsel's negotiations with the District Attorney for such plea bargaining proceeded, counsel ascertained that the defendant had become "more set on his pleading not

guilty." Counsel advised the defendant of counsel's opinion as to the evidence which would be presented against him at the trial but did not endeavor to persuade him to agree to a plea of guilty of the lesser offense.

On the day that the case was called for trial, counsel appeared and moved for a continuance in order that he might endeavor to arrange a further psychiatric examination of the defendant by a privately employed psychiatrist. This motion was denied for lack of timeliness.

The defendant thereupon entered a plea of "not guilty by reason of mental irresponsibility and insanity." To this, in the absence of the jury, the State objected for the reason that the defendant had given no prior notice of his intent so to plead and the State was taken by surprise. After examining the above mentioned report of Dr. Groce, the court inquired of defendant's counsel as to whether he had any evidence with reference to insanity of the defendant other than the statement and report of Dr. Groce. Upon being advised by counsel that he had no other evidence of insanity, the trial court made findings of fact with reference to the examination of the defendant by Dr. Groce at Dorothea Dix Hospital and the resulting report to the court by Dr. Groce, as above set forth. The court refused to accept the plea of the defendant as tendered and, thereupon, the defendant entered a plea of "Not guilty" and the trial proceeded.

Counsel for the defendant cross-examined each witness for the State, his cross-examination of the prosecuting witness being in substantial detail, the narration thereof in the record being actually longer than the narration of her direct testimony. He examined the investigating detective, the State's only police officer witness, in detail as to the lighting in the area wherein the State contends the offense was committed for the obvious purpose of discrediting the identification of the defendant by the prosecuting witness. The testimony of this officer indicated, among other things, that defendant's counsel had, prior to trial, examined the exhibits offered in evidence by the State, consisting of the clothing and other articles found at the scene where the offense is alleged to have been committed.

At the conclusion of the State's evidence, counsel for the defendant moved for a dismissal of the charge of rape in the first degree, which motion was denied.

Counsel for the defendant requested the court to instruct the jury with reference to intoxication at the time of the alleged offense. This request was denied. As above noted, there was no evidence of intoxication except the testimony of the prosecuting witness that she detected a slight odor of alcohol but the defendant did not appear to her to be drunk.

Upon the return of the verdict of guilty of first degree rape, counsel requested that the jury be polled, which was done. Counsel then moved in arrest of judgment, which motion was denied.

Judgment sentencing the defendant to death was then entered and counsel gave notice of appeal therefrom to the Supreme Court. The defendant was allowed 60 days in which to prepare and serve his case on appeal. The trial court thereupon appointed trial counsel to represent the defendant on his appeal. Subsequently, counsel moved for and obtained an extension of time for the service of the case on appeal due to the delay of the court reporter in supplying him with a transcript of the trial. Counsel also applied for and obtained a stay of execution pending his then contemplated appeal.

Counsel then failed to perfect the defendant's appeal to the Supreme Court and the State moved to dismiss the appeal on 29 March 1977. Thereupon, the Superior Court, instead of dismissing the appeal, removed counsel and appointed Mr. Redmond Dill, defendant's present counsel, to "perfect the appeal if that is possible, or if not to seek a writ of certiorari from the North Carolina Court of Appeals or the Supreme Court, as the case may be." The time for perfecting the appeal having expired, Mr. Dill properly petitioned the Supreme Court for the issuance of a writ of certiorari to bring the case before it for review. This petition was granted and the appeal was duly heard at the Fall Term 1977 upon briefs and oral argument. In such brief and oral argument, the defendant's present court-appointed counsel did not suggest the existence of any evidence of insanity of the defendant, any other evidence favorable to the defendant or any procedure or tactic in his behalf not taken at the trial which could be taken if a new trial were granted or any other reason to believe that such new trial might lead to a different verdict.

---

---

The statement of the case on appeal, prepared by the defendant's present court-appointed counsel, sets forth nine assignments of error, but in the brief filed by the defendant's present court-appointed counsel, the first six of these assignments are expressly abandoned. The three remaining assignments are: (1) Failure of the trial judge to sentence the defendant according to the terms of G.S. 148-49.1 and G.S. 148-49.4; (2) the imposition of the death penalty; and (3) denial of the defendant's constitutional right to effective counsel for the reason that his court-appointed trial counsel did not effectively represent him.

*Rufus L. Edmisten, Attorney General, by Thomas F. Moffit, Associate Attorney, for the State.*

*G. Redmond Dill, Jr., for Defendant.*

LAKE, Justice.

[1] Neither Article 3A of Chapter 148 of the General Statutes, which is relied upon by the defendant upon this appeal, now repealed but in effect at the time the defendant was sentenced, nor its successor, Article 3B, in effect since 1 October 1977, has any application to the present case, and there is no merit in the defendant's contention that the trial judge should have followed the procedure set forth therein when he sentenced this defendant. *State v. Niccum*, 293 N.C. 276, 238 S.E. 2d 141 (1977). Speaking through the Chief Justice, we there said, "We hold that neither Article 3A (repealed) nor 3B of N.C. Gen. Stats. Ch. 148 was intended to apply to convictions or pleas of guilty of crimes for which death or a life sentence is the mandatory punishment."

Furthermore, the record does not show that at the time of his conviction, this defendant was less than 21 years of age. His exact age does not appear in the record but the record does show that in July, 1974, nearly two years prior to his conviction, he was discharged from the Army after an undisclosed period of service therein. At the time of the offense of which he has been convicted, this defendant was no inexperienced, adventurous adolescent. Upon overwhelming, uncontradicted evidence, he has been found guilty of an exceptionally vicious, bestial rape with no extenuating or mitigating circumstance.

[2] At the time of the offense of which the defendant has been convicted, Chapter 1201 of the Session Laws of 1973 was in effect.

This statute rewrote G.S. 14-21 to divide the crime of rape into two degrees. It provided that for first degree rape "the punishment shall be death," but further provided, "In the event it is determined by the North Carolina Supreme Court or the United States Supreme Court that a sentence of death may not be constitutionally imposed for any capital offense for which the death penalty is provided by this Act, the punishment for the offense shall be life imprisonment." After the defendant was sentenced to death in accordance with this statute, and pending his appeal to this Court, the Supreme Court of the United States, in *Woodson v. North Carolina*, supra, held the corresponding provisions of G.S. 14-17, imposing the death penalty for murder in the first degree, violate the Constitution of the United States and, so, may not be given effect by the courts of North Carolina.

In *State v. Montgomery*, 291 N.C. 91, 229 S.E. 2d 572 (1976), we said, "[S]ince the provisions of G.S. 14-21, imposing the death penalty for the offense of first degree rape, cannot be distinguished, in this respect, from the provisions of G.S. 14-17, we must hold that there is merit in the defendant's attack upon the death sentence imposed upon him." Thus, under the compulsion of the decision of the Supreme Court of the United States in *Woodson v. North Carolina*, supra, we must now vacate the death sentence imposed upon this defendant and, pursuant to Chapter 1201, § 7, of the Session Laws of 1973, substitute therefor a sentence to life imprisonment.

[3] The defendant's third contention that he should be granted a new trial because of the ineffectiveness of his representation by his court-appointed trial counsel is completely lacking in merit. It is true that his trial counsel, though appointed by the trial court to represent him upon his appeal to this Court, failed to perfect his appeal within the time allowed therefor. However, when this failure of counsel was brought to the attention of this Court by the defendant's petition for certiorari, filed on his behalf by his present court-appointed counsel, we allowed the petition and brought the case before us for full review, which has now been had in the same manner and to the same extent as if there had been no failure by the original counsel to perfect the appeal. Thus, this failure of counsel has in no way prejudiced the defendant and is not basis for the granting of a new trial. We turn, therefore, to consideration of the adequacy of the defendant's representation in the trial court.

Article I, § 23, of the Constitution of North Carolina express-ly provides, "In all criminal prosecutions, every person charged with crime has the right * * * to have counsel for defense * * *." Article I, § 19, of the Constitution of North Carolina provides, "No person shall be taken, imprisoned * * * or in any manner deprived of his life, liberty, or property, but by the law of the land." Amendment VI to the Constitution of the United States, now made applicable to the States by construction placed upon Amendment XIV by the Supreme Court of the United States in *Powell v. Alabama*, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932), and *Avery v. Alabama*, 308 U.S. 444, 60 S.Ct. 321, 84 L.Ed. 377 (1940), provides, "In all criminal prosecutions the accused shall en-joy the right * * * to have the assistance of counsel for his defense." As stated by Justice Branch, speaking for this Court in *State v. Sneed*, 284 N.C. 606, 612, 201 S.E. 2d 867 (1974). "This right is not intended to be an empty formality but is intended to guarantee effective assistance of counsel."

What constitutes effective counsel? Obviously, the mere fact that the defendant was convicted does not show that his counsel was either incompetent, neglectful or ineffective. As we said in *State v. Sneed, supra,* neither the State nor the Federal Constitu-tion guarantees the defendant in a criminal case "the best available counsel, errorless counsel or satisfactory results for the accused." Again, as we there said, "Incompetency (or one of its many synonyms) of counsel for the defendant in a criminal pros-ecution is not a Constitutional denial of his right to effective counsel unless the attorney's representation is so lacking that the trial has become a farce and a mockery of justice." Even the most skilled counsel for the defense cannot "make bricks without straw" and his duty to his client does not require him to use dishonorable means, subterfuge or false testimony in order to con-fuse and mislead the court or the jury and thus procure a verdict favorable to the defendant.

Nothing in the record indicates in the slightest degree any divided loyalty on the part of defendant's court-appointed trial counsel, or any lack of diligence or skill in investigating, analyzing or evaluating the strength or weakness of the State's case, in searching for possible rebuttal evidence or in planning and presenting the defendant's case to the jury. According to the evidence, 15 minutes after the completion of the crime, the de-

fendant was found by police officers at the scene, sitting or lying, in a disheveled condition, upon the clothing of the victim abandoned by her when she fled from the scene. The defense of alibi was obviously unavailable. The victim's obvious physical condition negated the defense of consent. Her testimony, corroborated by the results of a virtually immediate medical examination, establishes beyond any reasonable doubt that the offense of rape was committed. In this situation, trial counsel sought and obtained expert psychiatric examination of the defendant, which failed to produce any evidence of insanity. Counsel then turned his efforts in the direction of obtaining a more favorable sentence by plea bargaining, which was unsuccessful, to which lack of success the defendant's insistence upon a plea of not guilty appears to have contributed.

[4]   When the case was called for trial, counsel moved for a continuance in the obviously vain hope that another psychiatric examination might be more favorable in result. This motion was directed to the discretion of the trial court. Strong, N.C. Index 3d, Criminal Law, §§ 91.1, 91.6. In the court's denial of this motion, we find no indication of abuse of discretion. *See: State v. Baldwin*, 276 N.C. 690, 174 S.E. 2d 526 (1970), in which the facts with reference to the motion for continuance are quite similar to those in the present case except that in that case there was some indication that a further psychiatric examination might be productive of evidence favorable to the defendant. Be that as it may, counsel made an effort to obtain a continuance. The record indicates that the denial of his motion was based in part upon counsel's failure to make it more promptly, but the record shows the real reason for the court's ruling was the absence of any indication of a basis for the belief that further psychiatric examination would be productive of results favorable to the defendant. Obviously, counsel was under no duty to make a misrepresentation to the court concerning that prospect.

[5]   Counsel's examination of witnesses for the State, as shown in the record, appears to have been amply extensive and there is nothing in the record to indicate that it was not skillfully conducted. The record does not disclose any objection by counsel to evidence offered by the State, but neither does it disclose any question by the District Attorney which was objectionable. The record indicates no impermissible pre-trial identification pro-

cedures. While the defendant's counsel did not request a voir dire examination of the prosecuting witness before she was permitted to identify the defendant in court as her assailant, the record indicates no basis for the belief that such an examination would have tainted her in-court identification. All of the evidence is that she was seized on a brightly lighted street, was dragged a short distance into a wooded area which was rather well lighted, there was a full moon, which would have been almost directly overhead at the time of the attack, and she was in a face to face encounter with her assailant for approximately 45 minutes. Fifteen minutes later, he was found alone at the scene of the crime, sitting or lying upon her clothing. Nothing in the record, or in the brief or oral argument of defendant's present counsel, suggests that the defendant ever told his trial counsel, or anyone else, that he was not the assailant. Under these circumstances, the failure of counsel to demand a voir dire examination of the prosecuting witness, prior to her in-court identification, cannot be deemed such evidence of ineffective assistance of counsel as to warrant the granting of a new trial.

The defendant's trial counsel made an oral argument to the jury. Nothing in the record, or in the brief or oral argument of the defendant's present counsel, indicates the slightest inadequacy of this argument. At the conclusion of the trial, the learned trial judge, who had full opportunity to observe and determine the quality of the representation received by the defendant at the trial, appointed the trial counsel to represent the defendant on the appeal.

On 11 May 1977, the defendant's present, able counsel was appointed for purposes of the appeal. More than two months later, he served upon the District Attorney the statement of the case on appeal. Six months later he argued the appeal in this Court. It is worthy of note that his intervening study of the transcript of the trial did not disclose to him any question directed to any witness by the District Attorney which should have been made the subject of an objection. In his oral argument in this Court, he frankly stated that, notwithstanding his own opportunity to review the report of Dr. Groce concerning the defendant's mental condition some three weeks after the offense, and notwithstanding his own opportunities in the meantime to confer with the defendant, he was unable to state in what respect

his tactics at a new trial would differ from those pursued at the original trial by the defendant's then court-appointed counsel.

We conclude that the defendant has failed to show that at his trial in the Superior Court he was prejudiced in any way by the representation given him by his then court-appointed counsel.

Pursuant to the custom of this Court in cases wherein the defendant has received a sentence to death or life imprisonment, we have carefully examined the entire record on appeal and have not limited our review to those assignments of error brought forward in the appellant's brief. We find in the record no error which would justify the granting of a new trial to this defendant. To warrant a new trial, there should be made to appear that the ruling complained of was material and prejudicial to defendant's rights and that a different result could well have ensued had the error not been committed. Strong, N.C. Index 3d, Criminal Law, § 167; *State v. Jones*, 278 N.C. 259, 179 S.E. 2d 433 (1971); *State v. Turner*, 268 N.C. 225, 150 S.E. 2d 406 (1966); *State v. Bryant*, 236 N.C. 745, 73 S.E. 2d 791 (1953); *State v. Bovender*, 233 N.C. 683, 65 S.E. 2d 323 (1951). As this Court, speaking through Justice Barnhill, later Chief Justice, said in *State v. Bryant*, supra, "*On this record* he could have no reasonable hope of acquittal in a future trial, for such a verdict would manifest a clear miscarriage of justice." In *State v. Turner*, supra, we said: "The seriousness of the offense charged and the severity of the potential penalty therefor do not constitute or affect the test to be applied in determining whether an error is prejudicial or nonprejudicial. The test is not the possibility of a different result upon another trial. The test is whether there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises."

[6] We think a like test is appropriate in determining whether a new trial should be granted because of alleged ineffectiveness of court-appointed trial counsel. We find nothing in this record, or in the brief or oral argument of the defendant's present counsel, to indicate that any different, and legitimate, tactic or procedure by the defendant's trial counsel would have produced in this case a verdict more favorable to the defendant.

[7] When the defendant was called upon to plead to the indictment, he responded, "Not guilty by reason of mental irrespon-

sibility and insanity." Upon objection by the District Attorney, upon the ground that he was taken by surprise, he having had no prior notice of the defendant's intent to rely upon insanity as a defense, the court rejected the proposed plea and the defendant thereupon entered a simple plea of "Not guilty." In *State v. Potts*, 100 N.C. 457, 6 S.E. 657 (1888), speaking through Chief Justice Smith, this Court said:

> "When called on to plead to the indictment, the prisoner answered, and proposed it should be so entered: 'I admit the killing, but was insane at the time of the commission thereof; therefore, not guilty.' The preliminary portion of the answer was rejected, and the plea entered in the usual form, divested of the irrelevant and impertinent surplusage; and this was entirely proper. The inquiry put to him required a direct and positive response, and this is contained in the plea, not guilty, under which every defense to the charge, in repelling, or mitigating and reducing the offense to a lower degree, was admissible."

Thus, under the plea as entered, evidence of the defendant's insanity, if otherwise competent, would have been admissible. We do not reach the point upon the present appeal as to whether, by virtue of lack of notice to the State of intent to rely upon insanity as a defense, the defendant could be properly precluded from offering evidence of insanity. In the present case, no evidence of insanity was offered by the defendant. Nothing whatsoever in the record indicates that the defendant was insane at the time the offense was committed and nothing in the record indicates that such failure to offer such evidence was due to any inability or ineffectiveness of his court-appointed counsel.

Notwithstanding the defendant's express abandonment of his Assignments of Error No. 1 through No. 6 in the brief prepared by his present counsel, we have carefully considered each of those assignments. We concur in the judgment of his present counsel that there is no merit in any of them.

This case is remanded to the Superior Court of Burke County with directions (1) that the presiding judge, without requiring the presence of the defendant, enter a judgment imposing a sentence of life imprisonment for the first degree rape of which the defendant has been convicted; and (2) that in accordance with this judg-

ment, the Clerk of the Superior Court issue a commitment in substitution for the commitment heretofore issued. It is further ordered that the Clerk furnish to the defendant and to his attorney a copy of the judgment and commitment as revised pursuant to this opinion.

No error in the verdict.

Death sentence vacated.

Remanded for proper sentence.