STATE OF NORTH CAROLINA v. ALVA PATRICK BROWNING

No. 215A87

(Filed 3 February 1988)

1. Bills of Discovery § 6— failure to disclose composite—exclusion from evidence rather than mistrial as sanction

　　The trial court did not abuse its discretion in refusing to allow a composite to be introduced into evidence as a sanction for the State's failure to disclose the composite pursuant to defendant's discovery motion rather than allowing defendant's motion for a mistrial when a reference was made to the composite.

2. Criminal Law §§ 50.2, 86.8— testimony concerning composite—no improper lay opinion—no improper opinion about witness credibility

　　An officer's testimony that after viewing a composite he formed an opinion that it was a very similar likeness of defendant and that he then sought out the two child victims and obtained from them a positive identification of defendant as the person who assaulted them did not constitute an improper expression of a lay opinion in violation of Rule of Evidence 701. Nor did such testimony constitute an impermissible opinion about the credibility of the victim who helped prepare the composite since the victim did not testify as to her part in the preparation of the composite or whether it resembled defendant.

3. Criminal Law § 134.4— first degree sexual offense—mandatory life sentence— youthful offender statute inapplicable

　　The committed youthful offender statute, N.C.G.S. Ch. 148, Art. 3B, does not apply to a conviction or plea of guilty to a first degree sexual offense for which the punishment is mandatory life imprisonment.

APPEAL by defendant from judgments sentencing defendant to concurrent terms of life imprisonment for each of two convictions of sexual offense in the first degree and nine years for each of two offenses of kidnapping in the second degree, said judgments imposed by *Rousseau, J.*, at the 1 December 1986 session of Superior Court, FORSYTH County. Heard in the Supreme Court 7 December 1987.

　　*Lacy H. Thornburg, Attorney General, by Jane Rankin Thompson, Assistant Attorney General, for the state.*

　　*Malcolm Ray Hunter, Jr., Appellate Defender, by Daniel R. Pollitt, Assistant Appellate Defender, for defendant.*

MARTIN, Justice.

Defendant contends that the trial judge erred by admitting incompetent evidence and by failing to determine whether defendant should be sentenced as a committed youthful offender. We find no prejudicial error in defendant's trial and sentencing.

The state's evidence showed that on 8 May 1986 two young girls, the victims in this case, were at Hanes Park in Winston-Salem with their mother. While their mother practiced softball, the victims, eight and five years old, played on the swings. A man, who identified himself to the children as "Patrick," pushed them on the swings and offered to take them to a merry-go-round. He held their hands and led them away and would not release them when they pulled back. He took them under a bridge and forced each child to perform fellatio upon him. The girls ran away and told their mother what had happened. She promptly reported the incident to the police. When Officer Neal Blue arrived, the children told the same story to him and led him to the tunnel under the bridge where the assaults occurred. There Officer Blue found footprints. The girls were taken to the hospital and then to the police station where they assisted in the preparation of a composite likeness of defendant. Later in the month the girls were attending Mayfest (a street fair) in Winston-Salem with the witness Kendra Wilborn. The eight-year-old child saw the defendant there and told Wilborn, "There is the man." Officers were called and Officer Jenkins took defendant to the police station where he was questioned and released. Thereafter Officer Jenkins saw the composite and questioned the girls further about the identity of the perpetrator. Both children made a positive identification of defendant.

Defendant's evidence showed that at the time of the alleged offenses he was living with his father and working in his aunt's restaurant. Defendant's mother abandoned the family in 1980. Defendant's father is a paranoid schizophrenic and is unable to give him any direction. Defendant's aunt, Wanda Ball, testified that defendant had had a "rough time" since his mother left him. Defendant's father testified that defendant was at home with him during the early evening hours of 8 May 1986. Defendant testified that he did not go to Hanes Park on 8 May and did not know anything about the alleged offenses. He said that he was at home on

8 May until after 9:00 p.m. Further, defendant testified that he had never seen the victims until Mayfest. Defendant was sixteen years old on the day in question.

Defendant contends that the trial court erred in allowing Officer Jenkins to testify concerning a composite likeness of the defendant. The older victim assisted in the preparation of the composite. At trial the following took place during the testimony of Mike Jenkins, a Winston-Salem police officer, as to the events at Mayfest on 17 May:

A. I was approached by several black males and females and children.

Q. What did you do at that time?

A. One of the ladies who I later identified as Shewanna Wilborn stated that two children that was with her — [the victims]—

. . . .

A. — had been sexually assaulted. And I said well, what has this got to do with Mayfest? And she said that this white male that assaulted the children were [sic] at the Mayfest. I asked them which one? And they pointed out —

. . . .

A. — pointed out the defendant, Mr. Patrick Browning here.

. . . .

A. . . . . And so I went to the defendant over here, Mr. Browning, and asked for identification. He said he didn't have any. I asked him his name and address and he stated Alva Patrick Browning, I believe, 409 Westdale. I'm not sure of the address. He asked me then what it was all about. And I advised him that all I knew was concerning some sexual assault case.

. . . .

A. So we went to the command post on 4th Street, School of the Arts Building. I asked him to go with me and

he, you know, advised he would. Went at this time to the basement, communications post and I attempted to call the clerk's office in record division in attempt to find these warrants that the—Mrs. Wilburn had said was on this gentleman. And the Clerk's office said there were no warrants and records division said no warrants either.

So, Mr. Patrick left at that time. . . .

. . . .

Q. After that, where did you go?

A. I went to the Public Safety Center in an attempt to find this complaint report that was made on this earlier. . . .

. . . .

Q. While you were there, did you see a composite?

A. Yes, I did, in records division.

Q. And was that composite made in connection with an earlier report?

MR. GRAHAM: Objection.

. . . .

Q. Well, I'll show you this piece of paper that I mark—

MR. GRAHAM: Motion for mistrial, Your Honor. That's one of the things he should have given me a long time ago.

During a colloquy in the absence of the jury, the trial judge ruled that the composite was not admissible as evidence but that the officer could testify what he did as a result of viewing it. Thereafter, over defendant's objections, the witness testified before the jury that after looking at the composite he formed an opinion that it was a very similar likeness of the defendant. He thereupon contacted his supervisor and then located the two children and asked them whether the man that they had earlier pointed out to him at Mayfest was the person who had assaulted them. Both children answered yes and also identified him by name, Patrick.

[1]   Defendant first argues that his motion for a mistrial should have been allowed when the state first made reference to the composite because the state had failed to disclose the composite upon defendant's motion for discovery. On 19 June 1986 defendant filed a motion for an order requiring discovery pursuant to N.C.G.S. § 15A-902(a), requesting "any . . . papers, documents . . . or other tangible objects." Defendant failed to pursue his motion until the case was called for trial on 2 December 1986. At the hearing of the discovery motion, the composite was not disclosed by the state. As previously noted, when the issue of the composite was raised later at trial, the trial judge would not allow it to be introduced into evidence. This form of sanction for failing to comply with discovery is expressly authorized by N.C.G.S. § 15A-910(3). The choice of sanction, if any, rests within the discretion of the trial court. *State v. Thomas*, 291 N.C. 687, 231 S.E. 2d 585 (1977). Defendant has failed to demonstrate any abuse of discretion by the trial judge, *State v. McCoy*, 303 N.C. 1, 277 S.E. 2d 515 (1981); therefore we reject this argument.

Defendant further reasons that the testimony of the witness Jenkins, set forth above, was inadmissible as violating the sanctions order of the trial judge and because it was improper lay opinion testimony. We disagree. The testimony of the witness Jenkins was precisely within the ruling of the trial judge. In the absence of the jury, the trial judge told counsel:

> Well, I'll let you ask him if he saw a composite picture and what he did about it. As I understand, your statement was he saw a composite and saw it looked like this defendant and then called for the children's mother to bring the children down and identify them.

MR. LYLE: Is that what happened, Officer Jenkins?

THE WITNESS: Yes, sir.

The testimony of Jenkins did not violate the trial judge's ruling.

[2]   Defendant further argues that the challenged testimony constituted an improper expression of lay opinion in violation of Rule 701 of the North Carolina Rules of Evidence. Rule 701 permits opinion testimony by a lay witness where the opinion is (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a

fact in issue. Here Jenkins' opinion was based upon his own perception by looking at the composite. The testimony was helpful to the jury in understanding his testimony: it showed why, after viewing the composite, he sought out the two children again and obtained from them a positive identification of defendant as the person who assaulted them. This was in turn helpful in determining the issue of whether defendant was the perpetrator of the crimes.

Defendant's argument that the testimony constituted an impermissible opinion about the older victim's credibility as a witness misses the mark. Here we do not have a witness testifying that the victim's testimony is consistent, or believable, or not fantasy. *See State v. Aguallo,* 318 N.C. 590, 350 S.E. 2d 76 (1986); *State v. Ramey,* 318 N.C. 457, 349 S.E. 2d 566 (1986); *State v. Bowman,* 84 N.C. App. 238, 352 S.E. 2d 437 (1987). The child witness did not testify as to her part in the preparation of the composite or whether it resembled defendant.

Moreover, assuming arguendo that the opinion testimony was error, there has been no showing by defendant that a different result would have been reached if the testimony had been excluded. N.C.G.S. § 15A-1443(a) (1983). Defendant does not challenge the competency of the eight-year-old child as a witness. The state's evidence identifying defendant as the perpetrator of the crimes left little to be desired. The witness described the perpetrator as white, tall, wearing blue jeans, T-shirt, no socks, and white shoes; he had curly blond hair and his face looked red; and he said his name was Patrick. She was with the person for a period of several minutes, at the swings and during the alleged assaults. This gave her ample time to observe him. Later in the month of May she recognized defendant at the crowded Mayfest street celebration, remembered his name, and pointed him out to Kendra Wilborn, who notified the police. Later that same day at Mayfest she identified to Officer Jenkins the defendant as the person who assaulted her. Ultimately, at trial some six months later, she unequivocally identified defendant as the perpetrator. Further, she described in graphic terms the events leading to the crimes as well as the assaults themselves. Officer Jenkins' challenged opinion added little, if anything, to the credibility of the child witness. We find no prejudicial error in defendant's trial and conviction.

**[3]** Last, defendant urges that he is entitled to a new sentencing hearing to determine whether he should be sentenced as a committed youthful offender. He argues that *State v. Niccum*, 293 N.C. 276, 238 S.E. 2d 141 (1977), is not dispositive of this issue. In *Niccum*, a murder case, this Court held that the committed youthful offender statute did not apply to convictions or pleas of guilty of crimes for which a life sentence is the mandatory punishment. Defendant reasons that because this is a sex offense case, *Niccum* does not apply. However, this Court has held in *State v. Ziglar*, 308 N.C. 747, 304 S.E. 2d 206 (1983), and *State v. Mathis*, 293 N.C. 660, 239 S.E. 2d 245 (1977), that the holding of *Niccum* applies to first degree rape cases.

We now hold that article 3B of chapter 148 of the General Statutes of North Carolina does not apply to a conviction or plea of guilty of a sexual offense in the first degree, N.C.G.S. § 14-27.4 (1986), for which the punishment is mandatory life imprisonment. The rationale expressed by Chief Justice Sharp in *Niccum* has been a part of our law for more than ten years without modification by the General Assembly, although the legislature has amended the committed youthful offender statute in other respects. The rationale of *Niccum* is equally applicable to the case before us. The trial judge properly refused to consider whether defendant should be sentenced as a committed youthful offender.

Defendant received a fair trial, free of prejudicial error.

No error.