STATE OF NORTH CAROLINA v. HARRIS KELTON WILLIAMS

No. 22

(Filed 16 March 1979)

1. **Criminal Law § 101— juror speaking to husband—no admonitions required—no showing of prejudice**

    Defendant failed to show any prejudice to himself where the trial court apparently allowed a juror to step out into the courtroom or to the door of the courtroom and deliver a set of keys to her husband and the court did not provide the juror with admonitions as required by G.S. 15A-1236, since the admonitions prescribed by that statute are not required in a situation like the one involved here, and since there was nothing to suggest that the court permitted the juror to converse with her husband concerning the case.

2. **Homicide § 15.4— answer to hypothetical question—defendant's responsibility—expert's opinion admissible**

    Though a hypothetical question asked of defendant's expert witness on cross-examination was not very clear, it and the witness's answer were not prejudicial to defendant, since, by his answer, the witness: (1) stated his conclusion that alcoholic intoxication precipitated commission of the offenses, and intoxication was at least a part of defendant's defense; (2) presumed that the intoxication was voluntary, and there was no evidence to the contrary, and (3) assumed that defendant would be responsible for his actions, which was, in effect, a statement of the witness's opinion that defendant was responsible for his criminal behavior.

3. **Homicide § 7.1— defendant intoxicated—instruction on unconsciousness not required**

    In view of the overwhelming evidence that defendant's mental state at the time of the commission of the offenses in question was brought about by his excessive consumption of intoxicants, the trial court did not err in refusing to instruct the jury on the defense of unconsciousness.

4. **Homicide § 30.2— failure to submit lesser offense of voluntary manslaughter—no error**

    The trial court in a murder prosecution did not err in failing to submit voluntary manslaughter as an alternate verdict since there was no merit to defendant's contention that, when the husband of one of the murder victims stood up and told defendant to leave his home, that was sufficient provocation to incite him to commit an unintentional act.

5. **Burglary and Unlawful Breakings § 6.4— jury instructions—consent—no error**

    Defendant's contention that the trial court erred in its jury instruction relating to breaking and entering in that it did not explain adequately the element of consent was without merit; and even if defendant's argument were valid, he failed to show prejudice since the court consolidated the misdemeanor breaking and entering conviction with the felonious assault conviction for purpose of judgment and imposed one sentence within the limits allowed for the felony.

APPEAL by defendant from *Collier, J.*, 7 August 1978 Mixed Session of BLADEN Superior Court.

Upon pleas of not guilty, defendant was tried on bills of indictment charging him with (1) murdering Ramonia Nichols, (2) assaulting Robert F. Nichols with a deadly weapon with intent to kill inflicting serious bodily injuries, and (3) breaking into and entering the residence of Robert F. Nichols with intent to commit a felony therein.

Evidence presented by the State tended to show:

At around 5:00 or 5:30 p.m. on 23 March 1978 Mr. Nichols, who is a minister, his wife, his eight-year-old daughter, his three-year-old son, defendant's wife and defendant's two-year-old son were at the Nichols' home. They were preparing to eat supper when defendant, without knocking, opened a screen or storm door and walked into the room where the others were. Mr. Nichols asked defendant how he was doing, and defendant answered "[n]ot too damn good". Mr. Nichols then stood up and told defendant if he was going to curse to leave his home immediately.

Defendant proceeded to pull a gun from underneath his shirt and shot Mr. Nichols in his right shoulder. As Mr. Nichols turned and took a step to his left, defendant shot him in his hip. Defendant then shot Mrs. Nichols who ran to another part of the house where she died within minutes from the gunshot wound. In an effort to calm defendant, his wife put her arms around him, led him to one of the bedrooms and kept him there until police arrived.

Mr. Nichols received extensive medical treatment for his injuries.

Defendant's testimony is summarized in pertinent part as follows: The incidents in question occurred on Thursday and he had been drinking very heavily since the preceding Saturday. On that Thursday he began drinking early in the morning and during the day he went to various places where he drank whiskey and beer. He had known Mr. and Mrs. Nichols for several years, attended Mr. Nichols' church, considered them his friends and had no animosity against either of them. He did not remember going to the Nichols home, or shooting anyone, but did remember being in the bedroom of the home when the police arrived. For many

years he had suffered from bad headaches and had sought medical treatment. On several occasions he had suffered from lapse of memory and would not recall where he had been or what he had done.

On cross-examination defendant admitted to prior convictions of fornication and adultery, nonsupport, assault with a deadly weapon, breaking and entering, simple assault and other charges.

Defendant presented other evidence tending to show that he had drunk 19 pints of liquor during the five days preceding the shootings; that he had suffered blackout spells during previous years even when he was not drinking; and that he had committed minor acts of violence that he could not remember committing.

Other parts of the evidence pertinent to the questions raised on appeal will be referred to in the opinion.

The jury returned verdicts finding defendant guilty of second-degree murder, nonfelonious breaking and entering, and assault with a deadly weapon with intent to kill inflicting serious injury. On the murder count, the court entered judgment imposing a sentence of life imprisonment. The court consolidated the other two counts for purpose of judgment and imposed a prison sentence of not less than 15 nor more than 20 years, this sentence "to run consecutively with" sentence imposed on the murder count.

Defendant appealed from the judgments and we allowed motion to bypass the Court of Appeals in the breaking and entering and felonious assault cases.

*Attorney General Rufus L. Edmisten, by Assistant Attorney General Richard L. Griffin, for the State.*

*Herbert J. Zimmer for defendant-appellant.*

BRITT, Justice.

[1] By his first assignment of error defendant contends the trial court erred in permitting a juror to leave the jury box "and/or the courtroom" during the trial without providing the juror with proper admonitions as required by G.S. 15A-1236. We find no merit in this assignment.

The record discloses that during the direct examination of witness Rollins, the following transpired:

"COURT: (TO JUROR NO. ONE.) You may step out there and speak to him if you like. She left home with both sets of keys. Her husband's outside and he's a little upset. (JUROR LEAVES AND RETURNS.) All right, sir."

The foregoing is the only information we have with respect to the incident complained of. That being true, we can only speculate as to exactly what took place. To us the record indicates that the trial judge merely permitted the juror to step out into the courtroom, or to the door of the courtroom, and deliver a set of keys to her husband. There is nothing to suggest that the court permitted the juror to converse with her husband concerning the case — only that the court permitted the juror to speak to her husband briefly in connection with delivering him the keys.

We do not think the admonitions prescribed by G.S. 15A-1236 are required in a situation like the one we envision here. Furthermore, the rule is well settled in this jurisdiction that the burden is on defendant not only to show error but also to show that the error was prejudicial to him, the presumption being in favor of the regularity of the trial. *State v. Paige*, 272 N.C. 417, 158 S.E. 2d 522 (1968); *State v. Jarrett*, 271 N.C. 576, 157 S.E. 2d 4, *cert. denied*, 389 U.S. 865, 19 L.Ed. 2d 135, 88 S.Ct. 128 (1967); 4 Strong's N.C. Index 3d, Criminal Law § 167.

We hold that defendant has failed to show error by his first assignment.

[2] By his second assignment of error defendant contends the trial court erred in allowing his witness, Dr. Bob Rollins, to give an answer to "an improperly-formed question". We find no merit in this assignment.

The record reveals the following:

"CROSS EXAMINATION by Lee J. Greer:

Q. All right. Now Doctor, you concluded that the defendant in this case was able to cooperate with his attorney, and too, that he was able to understand his legal situation.

A. Yes.

Q. Did you also conclude that the events leading up to the crime was likely the result of alcoholic intoxication and since that intoxication was presumably voluntary, that you assumed that he would be considered responsible for his actions?

MR. WALTON: OBJECTION.

COURT: OVERRULED.

A. Yes.

EXCEPTION NO. 2."

The challenged question is not a model in clarity; however, considered in context, we hold that it and the answer to it were not prejudicial to defendant. Since the printed record does not include all of the examination and cross-examination of Dr. Rollins, by consent of the parties, we have obtained a copy of the transcript of his testimony.

Dr. Rollins was presented as a witness for defendant. The state stipulated that he was an expert in the general field of medicine, specializing in forensic psychiatry.

On direct examination the witness stated that he examined defendant at Dorothea Dix Hopsital between 13 April and 27 April 1978; that he had five or six conferences with defendant during that time; that he was trying to determine if defendant was mentally able to stand trial, whether he could give an opinion as to defendant's condition at the time of the offenses, whether defendant had some mental illness, and whether some treatment might be advisable; and that he concluded that defendant had a long-standing problem with alcohol addiction but that he was able to stand trial and confer with his attorney in preparation for trial. In response to a hypothetical question based on testimony regarding the amount of alcohol defendant had consumed over a period of two weeks prior to the shootings, Dr. Rollins stated that in his opinion defendant's excessive drinking could have prevented him from being able to form an intent to kill.

The challenged question is in three parts. By his affirmative answer, the witness (1) repeated his conclusion that alcoholic intoxication precipitated commission of the offenses, (2) presumed that the intoxication was voluntary, and (3) assumed that defend-

ant would be responsible for his actions. Clearly, defendant was not prejudiced by (1) as intoxication was at least a part of his defense. As to (2), we find nothing in the record to show that defendant's intoxication was other than voluntary. With respect to (3), the witness in effect was stating his opinion that defendant was responsible for his criminal behavior; certainly this was a proper inquiry for cross-examination.

It will be noted again that the question complained of was asked on cross-examination. This court has said many times that "[t]he limits of legitimate cross-examination are largely within the discretion of the trial judge, and his ruling thereon will not be held for error in the absence of showing that the verdict was improperly influenced thereby." *State v. McPherson*, 276 N.C. 482, 172 S.E. 2d 50 (1970); *State v. Edwards*, 228 N.C. 153, 44 S.E. 2d 725 (1947); 4 Strong's N.C. Index 3d, Criminal Law § 88.1.

We cannot believe the verdict in this case was improperly influenced by the challenged question and answer. Assignment of Error No. 2 is overruled.

[3] By his third assignment of error, defendant contends the trial court erred in failing to give requested jury instructions on the defense of unconsciousness. We find no merit in this assignment.

The defense of unconsciousness, or automatism, a relatively new development in the criminal law, is now recognized in this jurisdiction. The first of our opinions on the subject appears to be *State v. Mercer*, 275 N.C. 108, 165 S.E. 2d 328 (1969), written by Justice (later Chief Justice) Bobbitt. In *Mercer*, the Court quoted from numerous treatises and opinions from other states; among the quotations are the following:

> "If a person is in fact unconscious at the time he commits an act which would otherwise be criminal, he is not responsible therefor. The absence of consciousness not only precludes the existence of any specific mental state, but also excludes the possibility of a voluntary act without which there can be no criminal liability." 1 Wharton's Criminal Law and Procedure (Anderson), § 50, p. 116.

State v. Williams

"Unconsciousness is a complete, not a partial, defense to a criminal charge." 21 Am. Jur. 2d, Criminal Law § 29, p. 115.

275 N.C. 108, 116.

In *Mercer*, the Court also quoted from the opinion in *People v. Wilson*, 59 Cal. Rptr. 156, 427 P. 2d 820 (1967), in which that court held that the defendant was entitled to the following jury instruction:

"Where a person commits an act without being conscious thereof, such act is not criminal even though, if committed by a person who was conscious, it would be a crime.

*"This rule of Law does not apply to a case in which the mental state of the person in question is due to insanity, mental defect or voluntary intoxication* resulting from the use of drugs or intoxicating liquor, but applies only to cases of the unconsciousness of persons of sound mind as, for example, somnambulists or persons suffering from the delirium of fever, epilepsy, a blow on the head or the involuntary taking of drugs or intoxicating liquor, and other cases in which there is no functioning of the conscious mind and the person's acts are controlled solely by the subconscious mind.

"When the evidence shows that a person acted as if he was conscious, the law presumes that he then was conscious. The presumption, however, is disputable and may be overcome or questioned by evidence to the contrary." (Emphasis added.) 275 N.C. 108, 118.

In *Mercer*, the defendant was charged with murdering his estranged wife and her girl friend and son. The state's evidence showed: The victims lived in Wilson, N. C., while defendant was serving in the Army in another state. Learning that his wife was having affairs with other men, defendant went to Wilson for the purpose of seeing his wife and straightening out their marital troubles. His wife refused to see him and tried to secrete herself from him. On the evening in question defendant went to the house where he was sure his wife was and knocked on the door several times. When no one answered, defendant shot at the door twice, pushed it open with his foot and went inside. At that time a light

came on and someone said, "Ervin, don't do that". Defendant proceeded to fire three or four shots, killing his wife instantly and fatally wounding the other two victims. Defendant testified that when he went to the door and knocked, his wife hollered out from inside the house and told him if he did not leave she would call the police; that at that point his mind went blank and he had no recollection of anything else that happened at the house; and that the only intoxicants he had consumed that day consisted of two drinks of Vodka.

For failure of the trial court to instruct the jury on the defense of unconsciousness, and other errors, Mercer was given a new trial. It will be noted, however, that this court in awarding the new trial pointed out that there was *no evidence that Mercer was under the influence of intoxicants* or narcotics at the time of the offenses.

In *State v. Caddell,* 287 N.C. 266, 215 S.E. 2d 348 (1975), in an opinion by Justice Lake, this court reiterated its recognition of the defense of unconsciousness. However, the court overruled the holding in *Mercer* that unconsciousness is never an affirmative defense. The decision in *Caddell* is summarized in the opinion as follows (page 290):

> "We now hold that, under the law of this State, unconsciousness, or automatism, is a complete defense to a criminal charge, separate and apart from the defense of insanity; that it is an affirmative defense; and that the burden rests upon the defendant to establish this defense, unless it arises out of the State's own evidence, to the satisfaction of the jury."

In *Lewis v. State,* 196 Ga. 755, 27 S.E. 2d 659 (1943), the Supreme Court of Georgia held in a situation analogous to the one at bar that while somnambulism or sleepwalking is a legal defense to a charge of crime, it is not so if artificially induced by the accused by willfully drinking intoxicants to excess. That same rule governs the case before us.

In the case at hand defendant testified that on the morning of the day in question he drank two pints of Canadian Mist; that he was up and drinking until 5:00 a.m. the preceding night; and that he went to several places during the day where he continued

to drink beer and other intoxicants. There was no evidence that his drinking was not voluntary.

In view of the overwhelming evidence that defendant's mental state at the time of the commission of the offenses in question was brought about by his excessive consumption of intoxicants, we hold that the trial court did not err in refusing to instruct the jury on the defense of unconsciousness.

[4] By his fourth assignment of error, defendant contends the trial court erred in not submitting voluntary manslaughter as an alternate verdict for the jury to return on the murder charge. We find no merit in this assignment.

On the murder charge, the court instructed the jury that they might find defendant guilty of first-degree murder, guilty of second-degree murder, guilty of involuntary manslaughter or not guilty. While it might have been prudent for the court to submit voluntary manslaughter as an alternate verdict, we hold that its failure to do so, under the facts in this case, was not error.

Voluntary manslaugher has been defined many times in this state as the unlawful killing of a human being, without malice, express or implied, and without premeditation or deliberation. *State v. Wrenn*, 279 N.C. 676, 185 S.E. 2d 129 (1971); *State v. Benge*, 272 N.C. 261, 158 S.E. 2d 70 (1967); *State v. Foust*, 258 N.C. 453, 128 S.E. 2d 889 (1963); *State v. Kea*, 256 N.C. 492, 124 S.E. 2d 174 (1962). It is also well settled that one who kills a human being while under the influence of passion or in the heat of blood produced by adequate provocation is guilty of manslaughter. *State v. Wynn*, 278 N.C. 513, 180 S.E. 2d 135 (1971); *State v. Cooper*, 273 N.C. 51, 159 S.E. 2d 305 (1968); *State v. Watson*, 222 N.C. 672, 24 S.E. 2d 540 (1943).

Defendant argues that there was sufficient evidence at the time he shot Mrs. Nichols that he was "under the influence of passion or in the heat of blood", produced by reasonable provocation, to require the submission of voluntary manslaughter as an alternate verdict. Specifically, he argues that when Mr. Nichols stood up and told him to leave the Nichols home, that was sufficient provocation to incite him to commit an unintentional act. We find this argument unpersuasive. Mere words are not sufficient provocation to reduce murder in the second degree to

manslaughter, but legal provocation must be circumstances amounting to an assault or threatened assault. *State v. Watson*, 287 N.C. 147, 214 S.E. 2d 85 (1975); *State v. Hightower*, 226 N.C. 62, 36 S.E. 2d 649 (1946).

Defendant's assignment of error No. 4 is overruled.

**[5]** Finally, in his fifth assignment of error, defendant contends the trial court erred in its jury instructions relating to breaking and entering in that it did not explain adequately the element of consent. This assignment has no merit.

Defendant argues that the evidence shows that only Mr. and Mrs. Nichols did not give him consent to enter the house; that the evidence did not show that they were the owners or occupants of the house; that defendant's wife was in the house at the time he entered; and that there is nothing to show that she did not have standing to give him permission to enter the house and did not do so. This argument is not persuasive. Although all of the evidence presented at trial is not included in the record on appeal, that which is included is sufficient to raise strong inferences that the house was the home of Mr. and Mrs. Nichols and that defendant's wife was merely a guest at the time in question.

Furthermore, assuming defendant's argument is valid, he fails to show prejudice. It will be noted that defendant was found guilty of misdemeanor breaking and entering, that the court consolidated this charge with the felonious assault charge for purpose of judgment and imposed one sentence within the limits allowed for the felony. That being true, the verdict in the felonious assault case supports the judgment and defendant is in no position to complain about error in the misdemeanor case. *State v. Morgan*, 268 N.C. 214, 150 S.E. 2d 377 (1966); 4 Strong's N.C. Index 3d, Criminal Law § 171.1.

For the reasons stated, in defendant's trial, and the judgments appealed from, we find

No error.