STATE OF NORTH CAROLINA v. JOHNNY RAY ZIGLAR

No. 588A82

(Filed 7 July 1983)

1. **Criminal Law § 134.4— finding of no benefit from treatment as youthful offender—no error**

There was no error in the trial court's determination that the defendant would not benefit from treatment and supervision as a committed youthful offender for his first degree kidnapping conviction, but the "no benefit" finding was not applicable to his conviction for first degree rape for which a like sentence was the mandatory punishment. G.S. 14-1.1(a)(2) and G.S. 148.49.14.

2. **Criminal Law § 112.1— instructions—reasonable doubt**

The trial court's instructions on "reasonable doubt" did not preclude the jury from finding a reasonable doubt based on an insufficiency of the evidence where the trial judge instructed that the jury should not "go outside the evidence to imagine doubt to justify an acquittal" since the trial judge instructed the jury in clear and concise terms that a reasonable doubt can be based upon an insufficiency of the evidence in the two sentences above the objected to statement.

3. **Criminal Law § 88.1— scope of cross-examination—proper**

There was no abuse of discretion concerning the trial judge's rulings on the State's cross-examination of defense witnesses.

4. **Criminal Law § 33— evidence of victim's habits—properly admitted**

The trial judge properly allowed a victim to testify as to her habits when she was suffering from a migraine headache since evidence of habit is admissible to show that an actor did the same thing under the same conditions on the occasion which is in issue and since the evidence was relevant because the victim had previously testified that she had not gone to work on the night in question due to a migraine headache which kept her in bed all day during the day prior to the assault.

5. **Criminal Law § 50— questions within knowledge of witness—answer properly admitted**

Questions concerning things like what was the temperature, how far was one object from another, and what did certain persons look like called for answers which were within the knowledge of the witness and were properly admitted.

6. **Criminal Law § 52— opinion of expert properly admitted**

Where a review of the record indicated that the State established a witness as an expert in forensic serology and tendered him as such to the court, where the transcript was silent on this point but was clear that no objection was lodged by the defense at the time the State tendered the witness, the trial court did not err in allowing the State's witness to testify to the percentage of the population of the United States that possesses a certain blood type as the witness was qualified to give such an opinion.

**7. Criminal Law § 43— use of map to illustrate testimony of deputy sheriff proper**

Testimony by a deputy sheriff of the county involved was competent to authenticate a map of that county and the map was properly used to illustrate the testimony of the deputy sheriff.

**8. Criminal Law § 73— objection to hearsay testimony properly sustained**

An objection to testimony was properly sustained where the trial judge allowed the witness to testify to what she knew but not to what she had heard.

**9. Criminal Law § 43.4— photographs of victim and defendant properly admitted**

In a prosecution for first degree rape, the trial court properly allowed the use of photographs illustrating the wrist of the victim and the defendant's face and hands on the day of his arrest since the photographs were properly authenticated and used to illustrate the testimony of the State's witnesses.

**10. Criminal Law § 97.1— recall of witness—no error**

The trial judge did not err in allowing the State to recall a witness where the witness was recalled prior to the defendant presenting any evidence and before the State rested its case. G.S. 15A-1226(b).

**11. Criminal Law § 90— refusal to declare defense witness hostile—no error**

Where defendant requested that one of his witnesses be declared a hostile witness prior to any testimony having been given by the witness, the trial court did not err in refusing to allow the witness to be examined by the defense as a hostile witness.

**12. Criminal Law § 88— scope of cross-examination**

In this jurisdiction cross-examination is not confined to the subject matter of the direct examination but may extend to any matter relevant to the issues in the case. Further, the scope of the cross-examination rests within the discretion of the trial judge.

**13. Criminal Law § 86.2— prior convictions—questions not asked in bad faith**

Where there was no indication that questions concerning defense witnesses' prior criminal convictions and mental commitment were asked in bad faith, there was no error in permitting them.

DEFENDANT appeals as a matter of right from judgments of *Albright, J.,* entered during the 1 June 1982 Criminal Session of Superior Court, FORSYTH County.

Defendant was tried upon indictments, proper in form, issued 19 April 1982, charging him with first degree rape, first degree kidnapping and larceny of an automobile. On 3 June 1982 the jury found defendant guilty of first degree rape, first degree kidnapping and misdemeanor larceny. Judge Albright imposed a sen-

tence of life imprisonment for the first degree rape conviction; a twelve year sentence for the first degree kidnapping conviction, to run consecutively to the life sentence; and a prayer for judgment continued on the misdemeanor larceny conviction. The defendant's motion to bypass the Court of Appeals on the convictions for first degree kidnapping and misdemeanor larceny was allowed 2 October 1982.

The evidence for the State tended to show that the victim, Ms. Nellie Joann Bowling, age 31, was living at 2244 Barry Road, in Kernersville, North Carolina on 19 February 1982. The evidence also showed that the defendant, Johnny Ziglar, lived with his family across the street from the victim and the victim had known the defendant by sight for over a year. In the early morning hours of 19 February 1982 the victim left her residence and drove to a Pantry convenience store approximately one mile from her home. After purchasing some items at the Pantry the victim returned to her car and began to return home. At that point the defendant stepped from the vicinity of a telephone booth and waved for her to stop. The defendant asked for a ride home and since the victim recognized him as her neighbor she permitted him to ride with her. As the victim and the defendant reached the road on which they lived the defendant slid across the seat, stuck a gun in the victim's side and ordered her to drive the car as he instructed. At the defendant's command the victim stopped the car at an area near Highway 158 and Rail Fence Road more than three miles from the victim's residence. At this time the victim attempted to persuade the defendant to let her go but he became angry and began beating her with his fist and with the pistol. After this beating the victim agreed to take her slacks off. During the struggle the defendant had taken off the victim's blouse and bra. Once again the victim resisted and the defendant beat her with the butt of his gun, choked her and threatened to kill her. At this point the victim was forced to have sexual intercourse with the defendant. However, when the defendant attempted further sexual acts with the victim, she grabbed his wrist and did not turn loose until he bit her on the arm. Once again the defendant began choking the victim until she allowed him to have sexual intercourse with her a second time.

Afterwards, the defendant dragged the victim from the car and tried to open the trunk, intending to place the victim inside.

When the defendant failed to open the trunk he began beating the victim with a pipe and kicked her as she was lying in the mud. The victim got up and attempted to run but the defendant hit her in the head with some object resulting in near unconsciousness for the victim. The defendant took the victim's money (three to eight dollars) and her automobile, leaving her with only her pants and coat which she secured as she was dragged from the car by the defendant. This entire episode lasted for more than one hour.

After the defendant left the scene the victim remained in a nearby cornfield for approximately thirty minutes until she had determined that the defendant had left. She managed to find her way to the home of Mr. and Mrs. J. B. Vanhoy and informed them that she had been assaulted by the youngest Ziglar boy although she did not know his name. The victim did identify the defendant at trial as her assailant.

The defendant, a 17 year old boy, presented evidence of an alibi. His evidence tended to show that he and some friends drank beer at his home during the afternoon on the day before the assault. The defendant and several friends went to three different bars in the Kernersville area. Around 1:30 a.m. the defendant's evidence shows that he and Robbie Stevens caught a ride on a train to Varco Pruden, when they were told to get off the train, which they did. The defendant and Robbie Stevens then went to Robbie's house, arriving there about 2:10 a.m. The defendant stated that he left Robbie's house around 2:20 a.m. and went directly home arriving there between 3:00 and 3:30 a.m. He further stated that he did not go to the Pantry convenience store in question that evening.

At the close of all the evidence, the jury found the defendant guilty of first degree rape, first degree kidnapping and misdemeanor larceny. The sentences were ordered as previously indicated.

Additional facts pertinent to understanding the defendant's assignments of error will be incorporated into the opinion.

*Rufus L. Edmisten, Attorney General, by Assistant Attorney General Archie W. Anders, for the State.*

*Gordon H. Brown, for the defendant.*

COPELAND, Justice.

In this appeal the defendant argues that he is entitled to a new trial because of errors committed by the trial court. In considering the defendant's contentions we have carefully reviewed the briefs, the record and the transcript and have determined that the defendant received a fair trial, free of prejudicial error. Accordingly, we affirm the judgments entered by the trial court.

In his first assignment of error the defendant argues that the trial court erred in denying his motions to dismiss and set aside the verdicts due to an insufficiency of the evidence. Each of these motions raises a question as to whether the evidence is sufficient to submit the case to the jury and sustain a verdict of guilty. Such motions are tantamount to a motion for judgment as in case of nonsuit. *State v. Greer*, No. 560PA82 (N.C. S.Ct., 31 May 1983); *State v. Cooper*, 275 N.C. 283, 167 S.E. 2d 266 (1969).

It is elementary that in considering a trial court's denial of a motion for judgment of nonsuit, the evidence must be considered in the light most favorable to the State and the State must be given the benefit of every reasonable inference to be drawn from the evidence. *State v. Thomas*, 296 N.C. 236, 250 S.E. 2d 204 (1978). In viewing the evidence in the light most favorable to the State the trial court must only determine whether "there is reasonable basis upon which the jury might find that an offense charged in the indictment has been committed and the defendant is the perpetrator. . . ." *State v. Price*, 280 N.C. 154, 157, 184 S.E. 2d 866, 868 (1971). The record in this case reveals plenary evidence that each of the crimes charged in the indictments was committed and that the defendant perpetrated each crime. As a result the trial court did not err in denying the defendant's motions which challenged the sufficiency of the evidence and this assignment of error is overruled.

[1] As part of the judgment entered the court determined that the defendant would not derive benefit from treatment and supervision as a committed youthful offender. The defendant contends that this determination by the trial court was error because there was no competent evidence in the record to support the court's conclusion. G.S. 148-49.14 does not require a sentencing judge to supply reasons for his finding, only that he place his finding into the record. As a result we find no error in the trial court's deter-

mination that the defendant would not benefit from treatment and supervision as a committed youthful offender for his first degree kidnapping conviction, with the exception that G.S. 148-49.14 which requires the "no benefit" finding is not applicable to convictions where a life sentence is mandatory punishment. *State v. Niccum*, 293 N.C. 276, 238 S.E. 2d 141 (1977). The defendant was convicted of first degree rape which carries a mandatory life sentence as a Class B felony. See G.S. 14-1.1(a)(2). The trial judge did not err in finding that the defendant would derive "no benefit" as a committed youthful offender. This assignment of error is overruled.

[2] In his second assignment of error the defendant maintains that the trial court's instructions on "reasonable doubt" precluded the jury from finding a reasonable doubt based on an insufficiency of the evidence. The record reveals that the complained of instructions are as follows:

> Now, members of the jury, the phrase reasonable doubt means just what the words imply. It is a doubt based on reason arising from a thorough and impartial consideration of all the evidence in the case, or lack or insufficiency of the evidence, as the case may be. It is that state of mind in which you do not feel an abiding conviction amounting to a moral certainty of the truth of the charge. While you cannot convict the defendant on mere surmise or conjecture, *neither should you go outside the evidence to imagine doubt to justify an acquittal.* If, after careful deliberation you are convinced to a moral certainty that the defendant is guilty of the crime charged, then you are satisfied beyond a reasonable doubt. Otherwise, not. (Emphasis added.)

The defendant argues that the words "neither should you go outside the evidence to imagine doubt to justify an acquittal" negates the proposition that an acquittal is appropriate if there is an insufficiency of the evidence. "It is well established in this jurisdiction that a charge is to be construed as a whole and isolated portions of a charge will not be held prejudicial where the charge as a whole is correct and free from objection." *State v. Poole*, 305 N.C. 308, 324, 289 S.E. 2d 335, 345 (1982). Even if the complained of statement might have been erroneous, we need only to look two sentences above that statement to find where

the trial judge instructed the jury in clear and concise terms that a reasonable doubt can be based upon an insufficiency of the evidence. We find no error in the trial judge's instructions concerning "reasonable doubt" and overrule this assignment of error.

In his third assignment of error the defendant has grouped thirty-three exceptions wherein he challenges the admissibility of testimony because it was in response to leading or suggestive questions which amounted to allowing the prosecutor to testify. Of the thirty-three exceptions within this assignment of error, all but five concern questions posed by the prosecutor on direct examination and only a few of the twenty-eight exceptions concerning the direct examination by the State are in fact leading. "Rulings by the trial judge on the use of leading questions are discretionary and reversible only for abuse of discretion." (Citations omitted.) *State v. Smith*, 290 N.C. 148, 160, 226 S.E. 2d 10, 18 (1976), *cert. denied*, 429 U.S. 932, 50 L.Ed. 2d 301, 97 S.Ct. 339 (1976). We have reviewed each exception relating to the direct examination by the State and find no abuse of discretion on the part of the trial judge.

[3] The remaining five exceptions under assignment of error number three concern questions asked the defendant and his witnesses by the prosecutor on cross-examination. Specifically the defendant contends that the prosecutor's questions on cross-examination did not relate to the direct testimony of the witness and in at least one instance attempted to manufacture evidence via his questions. First, we note that the cross-examination of a witness may extend to any matter relevant to the action. *State v. Waddell*, 289 N.C. 19, 220 S.E. 2d 293 (1975), death sentence vacated, 428 U.S. 904, 49 L.Ed. 2d 1210, 96 S.Ct. 3211 (1976). Secondly, the scope of a cross-examination rests largely within the discretion of the trial judge, and his ruling thereon will not be disturbed in the absence of a showing that the verdict was improperly influenced by the ruling. *State v. Williams*, 296 N.C. 693, 252 S.E. 2d 739 (1979). We fail to see an abuse of discretion concerning the trial judge's rulings on the State's cross-examination of defense witnesses. As a result we overrule this assignment of error.

[4] The defendant next argues that the trial judge erred by allowing the victim to testify to her habits when she is suffering

from a migraine headache because such testimony in this case is irrelevant. First, we note that evidence of habit is admissible to show that an actor did the same thing under the same conditions on the occasion which is in issue in the case. *State v. Simpson*, 299 N.C. 335, 261 S.E. 2d 818 (1980); 1 Brandis on North Carolina Evidence § 95 (1982). Secondly, this evidence is relevant because the victim had previously testified that she had not gone to work on the night in question due to a migraine headache which kept her in bed all during the day prior to the assault. We overrule this assignment of error.

Also in assignment of error number four, the defendant contends that it was error for the trial court to allow the victim to testify to the time her husband got home from work on the day before the assault. We fail to see the error since the victim testified that she was at home at the time her husband arrived there from work. This assignment of error is meritless.

[5] The defendant further maintains under assignment of error number four that the trial court erred by allowing answers to hypothetical questions asked by the State without a proper basis in evidence. We have reviewed each of the defendant's ten exceptions set out in this argument and do not find one hypothetical question, proper or improper. It appears that the defendant is complaining that the questions asked by the State called for answers not within the knowledge of the witnesses. The questions concerned things like what was the temperature, how far was one object from another and what did certain persons look like. The transcript reveals that each question called for an answer that was within the knowledge of the witness. We overrule this contention.

[6] The defendant next asserts, once again under assignment of error number four, that the trial court committed prejudicial error by allowing State's witness Mark Nelson to testify to the percentage of the population of the United States that possesses a certain blood type. The defendant asserts that Mr. Nelson was not accepted by the court as an expert in any field and therefore his testimony cannot be treated as expert opinion testimony. Upon review of the record it is clear that the State established Mr. Nelson as an expert in forensic serology and tendered him as such to the Court. The transcript is silent on this point but it is

clear that no objection was lodged by the defense at the time the State tendered Mr. Nelson. The record indicates that the court could have found Mr. Nelson to be an expert in forensic serology and we, therefore, must assume that the trial judge found him qualified since the judge allowed him to testify. *State v. Monk*, 291 N.C. 37, 229 S.E. 2d 163 (1976). However, the defendant further maintains that an expert like Mr. Nelson is not qualified to give an opinion concerning what percentage of the population has a certain blood type. We disagree with this assertion. The record indicates that Mr. Nelson was qualified to give such an opinion. In addition, the defendant failed to object to the question concerning Mr. Nelson's opinion and did not make a motion to strike his answer. Therefore, any objection is waived. *State v. Goss*, 293 N.C. 147, 235 S.E. 2d 844 (1977); *State v. Mitchell*, 276 N.C. 404, 172 S.E. 2d 527 (1970). This assignment of error is overruled.

In his fifth assignment of error the defendant contends, among other things, that the court permitted the introduction of inadmissible hearsay evidence at eight different times during the course of the trial. Upon review of these eight exceptions we find that all of the statements were non-hearsay because they were neither offered to prove the truth of the matter asserted in the statement by the non-witness nor did they depend on the competency and credibility of some person other than the witness. 1 Brandis on North Carolina Evidence § 138 (1982). These eight exceptions are overruled.

[7] The defendant also maintains that the trial court improperly allowed a State's witness to testify by using an unauthenticated map of the Winston-Salem/Forsyth County area. The transcript reveals that the witness, Officer R. L. Russ, a deputy sheriff for Forsyth County, testified that he was familiar with Forsyth County, that the map was in fact of the Winston-Salem/Forsyth County area, that it portrayed the area around Kernersville and would aid him in illustrating his testimony. We feel that testimony by a deputy sheriff of the county involved is competent to authenticate a map of that county. Although the defendant argues that the map was used for non-illustrative purposes and was improperly passed to the jurors, a review of the transcript indicates that it was used to illustrate the location of various areas testified to by Deputy Sheriff Russ. It is an unchallenged principle that an authenticated map may be used to illustrate testimony and may

be subject to inspection by the jurors. 1 Brandis on North Carolina Evidence § 34 (1982).

[8]   Finally in his fifth assignment of error the defendant argues that the trial court erred in sustaining the State's objection to the following testimony:

> Q. You said that Vincent had a dog. Where is that dog now, do you know?

> A. Well, all I could say is what I have heard, but it disappeared. State's objection (hearsay).

The objection was properly sustained since the trial judge allowed the witness to testify to what she knew but not to what she had heard. This assignment of error and each of its fifteen exceptions is overruled.

[9]   The defendant next asserts that the trial court erred by allowing into evidence three photographs which were not properly authenticated. In addition, the defendant argues that the witnesses were allowed to testify while using the photographs for non-illustrative purposes. One of the photographs depicts the wrist of the victim and she testified that the photograph accurately represented the condition of her wrist shortly after the attack. The victim testified, using this photograph to illustrate, that she was bruised when the defendant grabbed and bit her arm. The second and third photographs depict the defendant's face and the other his hands on the day of his arrest. The photographs were authenticated by State's witness Stoltz and she used the photographs to illustrate her testimony concerning the appearance of the defendant's face and hands on the day of his arrest. These photographs were properly authenticated and were used to illustrate the testimony of the State's witnesses. *State v. Smith*, 300 N.C. 71, 265 S.E. 2d 164 (1980); *State v. Mays*, 225 N.C. 486, 35 S.E. 2d 434 (1945). This assignment of error is overruled.

The defendant next complains that the trial judge committed prejudicial error by not permitting him to adequately cross-examine several of the State's witnesses. In this regard the defendant has set out thirty-one exceptions to the trial judge's rulings. The scope of cross-examination rests in the discretion of the trial judge and his rulings will not be reversed absent a showing of an abuse of that discretion. *State v. McPherson*, 276 N.C.

482, 172 S.E. 2d 50 (1970). We have reviewed each of these exceptions and find that the trial judge did not abuse his discretion in limiting the defendant's cross-examination of the State's witnesses. Many of the questions were improperly argumentative, some were repetitive, some irrelevant and some were simply in an improper form. These exceptions are overruled.

The defendant next contends under assignment of error number seven that the trial court erred by preventing him from adequately examining his own witnesses. We have reviewed the eight exceptions taken by the defendant concerning the direct examination of his witnesses and find that the questions were either leading or irrelevant or not within the witnesses' knowledge. This assignment of error is meritless and overruled.

[10]  The defendant next assigns as error the trial judge's ruling which allowed the State to recall a witness. Under G.S. 15A-1226(b) the trial judge may in his discretion "permit any party to introduce additional evidence at any time prior to verdict." The witness involved was recalled prior to the defendant presenting any evidence and before the State rested its case. We see no abuse of discretion by the fine trial judge and overrule this contention.

[11]  Defendant also contends under assignment of error number eight that the trial judge erred when he refused to allow Vincent Ziglar, a defense witness to be examined by the defense as a hostile witness. The defendant requested that Vincent Ziglar be declared a hostile witness prior to any testimony having been given by the witness. In *State v. Austin*, 299 N.C. 537, 263 S.E. 2d 574 (1980) we held that a defendant, like the State, may not impeach his own witness unless he has been misled, surprised or entrapped, to his prejudice by the testimony of the witness. In addition such a request is addressed to the judge's discretion. *State v. Austin, supra.* We find no abuse of discretion and overrule this assignment of error.

[12]  In his final assignment of error the defendant contends that the State was allowed to cross-examine defense witnesses concerning irrelevant matters and matters not within the personal knowledge of the witnesses. In this jurisdiction cross-examination is not confined to the subject matter of the direct examination but may extend to any matter relevant to the issues in the case.

*State v. Waddell*, 289 N.C. 19, 220 S.E. 2d 293 (1975), death sentence vacated, 428 U.S. 904, 49 L.Ed. 2d 1210, 96 S.Ct. 3211 (1976). In addition, the scope of a cross-examination rests within the discretion of the trial judge and the judge's rulings will not constitute error unless it can be shown that the verdict was improperly influenced by those rulings. *State v. McPherson*, 276 N.C. 482, 172 S.E. 2d 50 (1970). We have carefully reviewed the defendant's exceptions concerning this contention and find that no error was committed by the trial judge.

[13] The defendant also asserts under his final assignment of error that it was improper for the State to question defense witnesses about prior criminal convictions and mental commitment. It is an established rule in this jurisdiction that a witness may be cross-examined about crimes for which he has been convicted. *State v. Williams*, 279 N.C. 663, 185 S.E. 2d 174 (1971); *Ingle v. Transfer Corp.*, 271 N.C. 276, 156 S.E. 2d 265 (1967). However, the questions must not be asked in bad faith. *State v. Hunt*, 297 N.C. 131, 254 S.E. 2d 19 (1979). There is no indication that the questions concerning criminal convictions were asked in bad faith and we find no error. As for the question concerning whether a defense witness was ever committed to a mental institution we find no indication that the question was asked in bad faith. In any event, the witness made a swift, unequivocal denial and therefore we find no prejudice to the defendant. *State v. Hunt*, 297 N.C. 131, 254 S.E. 2d 19 (1979). We overrule this final assignment of error.

We have carefully reviewed each of the defendant's exceptions and assignments of error and find that this trial was free of prejudicial error.

No error.