STATE v. CLOWERS

[217 N.C. App. 520 (2011)]

STATE OF NORTH CAROLINA v. DAVID WAYNE CLOWERS

No. COA11-590

(Filed 20 December 2011)

**1. Evidence—alcohol test documents—other evidence without objection**

There was no prejudicial error in a prosecution for driving while impaired from the introduction of an exhibit consisting of an Intoxilyzer machine test ticket, a rights form, and an affidavit and report from a chemical analyst. The chemical analyst testified without objection to essential information contained in the disputed exhibit.

**2. Motor Vehicles—driving while impaired—sufficiency of evidence**

There was sufficient evidence in a driving while impaired prosecution that defendant was operating a motor vehicle where a witness observed a moving car, watched it stop in the median, continued to watch until the police arrived, and did not see the driver or anyone else leave the car.

**3. Motor Vehicles—driving while impaired—administration of alcohol test to defendant—evidence sufficient**

The direct and circumstantial evidence presented by the State was sufficient to show that an identification technician administered an Intoxilyzer test to defendant. The technician did not directly identify defendant as the person to whom he administered the test but he testified about the administration of the test and an officer identified defendant as the person the officer arrested and transported to the jail for the test.

**4. Criminal Law—defenses—automatism—voluntary consumption of alcohol and anxiety drug**

The defense of automatism was not available to a driving while impaired defendant where there was no evidence that his consumption of alcohol was involuntary and defendant testified that his ingestion of an anxiety drug was voluntary.

**5. Motor Vehicles—driving while impaired—citation—willfulness language—surplusage**

The trial judge did not err in a driving while impaired case by denying defendant's requested instruction on willfulness where

the uniform citation included the word "willfully." Willfulness is not an element of the crime and "willfully" was disregarded as surplusage.

Appeal by defendant from judgment entered on 1 September 2010 by Judge Ripley E. Rand in Superior Court, Wake County. Heard in the Court of Appeals 7 November 2011.

*Attorney General Roy A. Cooper, III, by Assistant Attorney General John W. Congleton, for the State.*

*Wayne Buchanan Eads for defendant-appellant.*

STROUD, Judge.

David Wayne Clowers ("defendant") appeals from a conviction for driving while impaired. For the following reasons, we find no error in defendant's trial.

## I. Background

On 21 September 2008, defendant was charged by a uniform citation in Raleigh, North Carolina with driving while "subject to an impairing substance." Following his conviction in District Court, Wake County, defendant appealed to Superior Court. Defendant was tried on this charge at the 31 August 2010 Criminal Session of Superior Court, Wake County. The State's evidence tended to show the following: on 21 September 2008, Ms. Raynetta McMurrian was driving down Capital Boulevard in Raleigh, North Carolina around 2:00 a.m., and she called the police after she observed a red car in front of her swerving from one lane to another. Ms. McMurrian then observed the red car cross over into oncoming traffic lanes and then turn right into a grass median, hit something in the median, and come to a stop. She then pulled over on the side of the road, "less than a hundred feet" behind the red car, and waited until police arrived. Ms. McMurrian stated that she could only see one person in the red car but no one got out of the car and the car did not attempt to move off of the median. When a police officer arrived at the scene, Ms. McMurrian talked to him and then left the scene.

Officer N. S. Horner with the Raleigh Police Department responded to the scene around 2:16 a.m. on 21 September 2008. Officer Horner testified that she "came into contact with [defendant] in the median on Capital Boulevard between Spring Forest Road and Millbrook Road[,]" in Raleigh and Officer Downs, also with the Raleigh

Police Department, was talking through the window to defendant, who was sitting in the driver's seat of a red car. Officer Horner testified that she arrived eight minutes after the call went out and Officer Downs had arrived at the scene before her. Officer Horner testified that there were no other persons in the car with defendant and no one in the median other than defendant, Officer Downs, and herself. Officer Horner noticed that the front left corner of the red car was touching a speed limit sign in the median and the car appeared to be scratched or dented. Also, she observed skidmarks or impressions in the grass and mud "leading from the rear tires to the northbound lanes of Capital Boulevard, but the vehicle was facing southbound." Officer Downs and Officer Horner asked defendant to exit the car and Officer Horner noticed that he had "red, glassy eyes" and "a strong odor of alcohol about his person." She stated that defendant "had extreme difficulty trying to get out of the vehicle and was unable to stand on his own." Based on these observations, Officer Horner believed that defendant may have been driving while impaired and Officer Downs administered a field sobriety test to defendant. Defendant was unable to perform parts of the sobriety test and because of defendant's condition, they were unable to complete the field test for fear the defendant "would walk into and fall into traffic." Based on their observations and his performance on the sobriety test, defendant was placed under arrest and Officer Downs transported defendant to the Wake County Jail for an Intoxilyzer test.

Jacob Sanok, a senior identification technician with Wake County, City-County Bureau of Identification (CCBI), testified that on 21 September 2008 he came into contact with defendant. Mr. Sanok testified that he read defendant his rights regarding a request to submit to a chemical analysis to determine his alcohol concentration and defendant indicated that he understood those rights. Mr. Sanok then conducted a chemical analysis of defendant's breath using the Intoxilyzer machine at 4:00 a.m. Mr. Sanok testified that the lower of the two Intoxilyzer tests showed that defendant had .25 grams of alcohol per liter of breath. The State introduced into evidence the rights form; Mr. Sanok's "Affidavit and Revocation Report of Chemical Analyst[,]" showing that Mr. Sanok performed the Intoxilyzer test on defendant and defendant's alcohol concentration was greater than 0.15; and the printout from the Intoxilyzer test showing the test subject "Clowers, David W." had a reported alcohol concentration of .25g/210L[.]" Mr. Sanok gave defendant a copy of the Intoxilyzer results.

STATE v. CLOWERS

[217 N.C. App. 521 (2011)]

At the close of the State's evidence, defendant moved to dismiss the charge for lack of sufficient evidence. The trial court denied defendant's motion. Defendant testified in his own defense that on the day in question he was on the medication Alprazolam to treat an anxiety disorder. Defendant stated that he took Alprazolam as needed to treat panic attacks and to help calm him down. Defendant stated that on the night of 20 September 2008 he left his residence around 10 p.m. to go to a party in Raleigh and "had a few drinks." Although he testified that it was not a habit of his to drink excessive amounts of alcohol, he had planned to stay overnight at the party if he had "more than a couple of drinks." Defendant stated that he did not remember anything after having a few drinks until "regaining consciousness" the next day while lying on a bench in a jail cell. He said he did not remember driving the car or taking the Intoxilyzer test. Defendant also testified that he drove a 1997 red Mustang. At the close of his evidence, defendant renewed his motion to dismiss which was subsequently denied by the trial court.

On 1 September 2010, the jury found defendant guilty of driving while impaired and found the aggravating factor that "defendant had an alcohol concentration of at least 0.15 within a relevant time after driving." The trial court balanced the aggravating and mitigating factors and found a Level Four punishment should be imposed and sentenced defendant to a term of 120 days, which was suspended and defendant placed on unsupervised probation for 18 months. Other conditions of defendant's probation included surrender of his driver's license, community service, and monetary penalties. On 9 September 2010, defendant gave written notice of appeal from the judgment entered 1 September 2010.

## II. Admission of evidence

**[1]** Defendant first contends that "the trial court committed reversible error by admitting State's exhibit 4 into evidence over" his objection. Defendant argues that exhibit 4, which consisted of an Intoxilyzer machine test ticket, a rights form for persons requested to submit to a chemical analysis to determine their alcohol concentration, and an affidavit and report from chemical analyst Jacob Sanok, should not have been admitted as (1) it contained hearsay declarations and (2) no proper foundation was laid for the admission of this evidence. Defendant argues that he was prejudiced by the introduction of exhibit 4 because "the only link tying [him] . . . to the chemical tests of September 21, 2008, was the information written or typed on

those documents that made up Exhibit 4" and without that evidence he would not have been convicted or sentenced based on the aggravating factor that his alcohol concentration was greater than 0.15.

The trial transcript shows that defense counsel raised several objections during Mr. Sanok's testimony. In response to two of those objections, the trial court conducted a bench conference with the prosecutor and defense counsel. But there is no indication in the transcript as to the arguments raised in response to those objections during the bench conferences. Later during Mr. Sanok's testimony, defense counsel raised an objection when the State attempted to admit the documents contained as part of the State's exhibit 4 and the trial court asked the jury to go to the jury room so he could discuss defense counsel's objection. The only argument raised by defense counsel during that conference was to clarify which documents were to be included in State's exhibit 4. The trial court then overruled defense counsel's objection and the State's examination of Mr. Sanok continued. The grounds for defense counsel's objections during Mr. Sanok's testimony were not apparent from the context and the record contains no specific objection or argument by defense counsel that exhibit 4 contained hearsay statements or that the State failed to make a proper foundation before entering exhibit 4 into evidence, so we conclude that defendant only lodged a general objection to the admission of exhibit 4. However, "a general objection is ineffective" unless "there is no purpose for which the evidence could have been admissible[.]" *State v. McKoy*, 317 N.C. 519, 524-25, 347 S.E.2d 374, 377-78 (1986) (citation omitted). The chemical analyst, Mr. Sanok testified without objection to the essential information contained in State's exhibit 4. It is well established that "[w]here evidence is admitted over objection, and the same evidence has been previously admitted or is later admitted without objection, the benefit of the objection is lost." *State v. Whitley*, 311 N.C. 656, 661, 319 S.E.2d 584, 588 (1984) (citation omitted). Therefore, regardless of the grounds for defend- ant's objection, defendant lost the benefit of the objection to the introduction of State's exhibit 4 by his failure to object to other portions of Mr. Sanok's testimony, *see id.*, and any error that the trial court might have committed by allowing the admission of State's exhibit 4 into evidence did not prejudice defendant. Defendant's argument is overruled.

### III. Insufficiency of the evidence

Next, defendant contends that the trial court erred in denying his motion to dismiss for insufficiency of the evidence.

A defendant's motion to dismiss should be denied if there is sub-stantial evidence of: (1) each essential element of the offense charged, and (2) of defendant's being the perpetrator of the charged offense. Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion.

*State v. Johnson*, ___ N.C. App. ___, ___, 693 S.E.2d 145, 148 (2010) (citations and quotation marks omitted). In ruling on a motion to dis-miss, the trial court must consider all of the evidence in the light most favorable to the State, and "the State is entitled to all reasonable inferences which may be drawn from the evidence." *State v. Davis*, 130 N.C. App. 675, 679, 505 S.E.2d 138, 141 (1998). "Any contradic-tions or discrepancies arising from the evidence are properly left for the jury to resolve and do not warrant dismissal." *State v. King*, 343 N.C. 29, 36, 468 S.E.2d 232, 237 (1996) (citation omitted). Our Supreme Court has further noted that

> "[c]ircumstantial evidence may withstand a motion to dismiss and support a conviction even when the evidence does not rule out every hypothesis of innocence." *State v. Stone*, 323 N.C. 447, 452, 373 S.E.2d 430, 433 (1988). If the evidence presented is cir-cumstantial, the court must consider whether a reasonable infer-ence of defendant's guilt may be drawn from the circumstances. Once the court decides that a reasonable inference of defendant's guilt may be drawn from the circumstances, then " 'it is for the jury to decide whether the facts, *taken singly or in combination*, satisfy [it] beyond a reasonable doubt that the defendant is actu-ally guilty.' " *State v. Thomas*, 296 N.C. 236, 244, 250 S.E.2d 204, 209 (1978) (alteration in original) (quoting *State v. Rowland*, 263 N.C. 353, 358, 139 S.E.2d 661, 665 (1965)).
>
> [*State v. Barnes*, 334 N.C. 67, 75-76, 430 S.E.2d 913, 918-19 (1993)]. "Both competent and incompetent evidence must be con-sidered." *State v. Lyons*, 340 N.C. 646, 658, 459 S.E.2d 770, 776 (1995). . . . When ruling on a motion to dismiss, the trial court should be concerned only about whether the evidence is sufficient for jury consideration, not about the weight of the evidence. *See* [*State v. Earnhardt*, 307 N.C. 62, 67, 296 S.E.2d 649, 652 (1982)].

*State v. Fritsch*, 351 N.C. 373, 379, 526 S.E.2d 451, 455-56, *cert denied*, 531 U.S. 890, 148 L.Ed. 2d 150 (2000).

N.C. Gen. Stat. § 20-138.1(a) (2009) states that "[a] person com-mits the offense of impaired driving if he drives any vehicle upon

any highway, any street, or any public vehicular area within this State: . . . . (2) After having consumed sufficient alcohol that he has, at any relevant time after the driving, an alcohol concentration of 0.08 or more. The results of a chemical analysis shall be deemed sufficient evidence to prove a person's alcohol concentration[.]"[1] *See State v. Ray*, 54 N.C. App. 473, 474, 283 S.E.2d 823, 824 (1981) (To convict a person for driving while impaired, "the State must show that the defendant (1) [drove or operated] a vehicle, (2) upon a highway within the State, (3) while under the influence of [an] intoxicating [substance]." (citation and quotation marks omitted)). Defendant argues that the State failed to show sufficient evidence that he was operating a motor vehicle on the day in question or that he was the person upon whom the Intoxilyzer test was performed.

A. Operating a motor vehicle

[2] Defendant argues that the State's evidence merely provides "a strong suspicion" that he was operating a motor vehicle on the day in question, since no witness identified him as the driver. The direct and circumstantial evidence presented by the State shows that defendant was driving the red car on the day in question. At trial, Ms. McMurrian testified about her observations of the red car, which continued from her first sighting of the car until the car stopped in the median and the police arrived. She did not observe the driver or anyone else exit the car and the car did not move. She talked to a male police officer who arrived at the scene and then left. Only two officers responded to the scene. Officer Horner testified that she arrived eight minutes after the call went out and Officer Downs, who had arrived at the scene before her, was talking to the driver who was still seated in the car. So it could reasonably be inferred, *see Fritsch*, 351 N.C. at 379, 526 S.E.2d at 455-56, that Ms. McMurrian talked to Officer Downs before leaving the scene. The red car was observed continuously during the relevant time period, first by Ms. McMurrian and then by Officer Downs and Officer Horner. There is no evidence that any person fled from the red car before Officer Horner arrived. Officer Horner testified that when she arrived Officer Downs was talking to defendant, who was sitting

---

1. Pursuant to N.C. Gen. Stat. § 20-179 (2009), the trial court may weigh certain aggravating factors, if admitted to or found by a jury, against certain mitigating factors in determining the defendant's sentence following a conviction for driving while impaired pursuant to N.C. Gen. Stat. § 20-138.1(a). Here, the jury not only found defendant guilty of driving while impaired it also found the aggravating factor that "defendant had an alcohol concentration of at least 0.15 within a relevant time after driving." This aggravating factor was weighed by the trial court against certain mitigating factors and defendant was sentenced at a "Level Four punishment[.]"

in the driver's seat of the red car. Viewing this direct and circumstantial evidence in the light most favorable to the State, *see Davis*, 130 N.C. App. at 679, 505 S.E.2d at 141, there is a reasonable inference, *see id.*; *Fritsch*, 351 N.C. at 379, 526 S.E.2d at 455-56, that defendant was driving the red car on the morning in question. Therefore, defendant's argument is overruled.

B. Intoxilyzer test

**[3]** Defendant argues that the State never identified him as the person who took the Intoxilyzer test, and therefore, the State never showed that he had a sufficient alcohol concentration for a conviction for driving while impaired or for the aggravating factor that was used to increase his sentence. Mr. Sanok testified that he came into contact with defendant on 21 September 2008. Specifically, Mr. Sanok testified that he read defendant his rights for a person requested to submit to a chemical analysis to determine alcohol concentration and defendant indicated that he understood those rights; Mr. Sanok also stated that he administered the Intoxilyzer tests to defendant, and gave defendant a copy of the Intoxilyzer test. Further, the State introduced into evidence the rights form signed by defendant; Mr. Sanok's "Affidavit and Revocation Report of Chemical Analyst[,]" showing that Mr. Sanok performed the Intoxilyzer test on defendant; and the printout from the Intoxilyzer test showing that "Clowers, David W." had a reported alcohol concentration of ".25g/210L[.]" Even though in his testimony Mr. Sanok did not directly identify defendant as the person to whom he administered the Intoxilyzer test, Officer Horner identified defendant in the courtroom as the person Officer Downs arrested and transported to the Wake County Jail to submit to the Intoxilyzer test. We hold that the direct and circumstantial evidence presented by the State was sufficient to show that Mr. Sanok did administer the Intoxilyzer test to defendant on the morning in question and that the test showed that defendant had an alcohol concentration of .25. Accordingly, the trial court properly sent the charge to the jury and defendant's arguments are overruled.

IV. Jury Instructions

Lastly, defendant contends that the trial court erred in denying his request for jury instructions as to (1) the defense of automatism or unconsciousness and (2) the definition of willfulness. At trial, defense counsel requested an instruction as to automatism or unconsciousness and willfulness. The trial court denied those requested instructions. "[R]equested instructions need only be given in sub-

stance if correct in law and supported by the evidence." *State v. Morgan*, 359 N.C. 131, 169, 604 S.E.2d 886, 909 (2004) (citation omitted), *cert. denied*, 546 U.S. 830, 163 L.Ed. 2d 79 (2005). "When determining whether the evidence is sufficient to entitle a defendant to jury instructions on a defense . . . , courts must consider the evidence in the light most favorable to defendant." *State v. Oliver*, 334 N.C. 513, 520, 434 S.E.2d 202, 205 (1993) (citation and quotation marks omitted).

A. Automatism or unconsciousness instruction

**[4]** Defendant argues that an instruction as to automatism or unconsciousness should have been given as he testified that he blacked out and has no memory of what happened on the night in question. Defendant further contends that even though unconsciousness through voluntary consumption of alcohol or drugs does not support an instruction as to automatism or unconsciousness, here his unconsciousness could have been the result of the effects of voluntary consumption of alcohol combined with the effects of Alprazolam, a drug that he had been prescribed to control his panic attacks.

As noted above the essential elements of driving while impaired are "the defendant (1) [drove or operated] a vehicle, (2) upon a highway within the State, (3) while under the influence of intoxicating [substance]." *Ray*, 54 N.C. App. at 474, 283 S.E.2d at 824. Our Supreme Court, in describing the defense of unconsciousness or automatism, stated that

> [i]f a person is in fact unconscious at the time he commits an act which would otherwise be criminal, he is not responsible therefor. The absence of consciousness not only precludes the existence of any specific mental state, but also excludes the possibility of a voluntary act without which there can be no criminal liability. . . . Unconsciousness is a complete, not a partial, defense to a criminal charge.

*State v. Williams*, 296 N.C. 693, 698-99, 252 S.E.2d 739, 743 (1979) (citations and quotation marks omitted). However, in limiting the application of this defense, the Court further stated that this defense

> does not apply to a case in which the mental state of the person in question is due to . . . voluntary intoxication resulting from the use of drugs or intoxicating liquor, but applies only to cases of the unconsciousness of persons of sound mind as, for example, somnambulists or persons suffering from the delirium of fever, epilepsy, a blow on the head or the involuntary

taking of drugs or intoxicating liquor, and other cases in which there is no functioning of the conscious mind and the person's acts are controlled solely by the subconscious mind.

*Id.* at 699, 252 S.E.2d at 743 (citation and emphasis omitted). Here, even though defendant testified that it was not his intention to drink alcohol in excess on the night in question, there was no evidence that his consumption of alcohol was involuntary. Further, despite the possible side effect of Alprazolam, defendant testified that his ingestion of the anxiety drug was also voluntary. Therefore, the defense of automatism was not available to defendant. *See id.* Therefore, the trial court did not err in denying defendant's requested jury instruction as to automatism or unconsciousness as the evidence, even viewed in the light most favorable to the defendant, *see Oliver*, 334 N.C. at 520, 434 S.E.2d at 205, did not support that instruction. *See Morgan*, 359 N.C. at 169, 604 S.E.2d at 909.

B. Willfulness instruction

**[5]** Defendant argues that the trial court should have instructed the jury on the definition of "willfulness" because the charging officer did not cross out the word "willfully" on the driving while impaired citation and therefore, willfulness was an additional element of the crime that the State was charging him with.

As noted above, the essential elements of the crime of driving while impaired are "the defendant (1) [drove or operated] a vehicle, (2) upon a highway within the State, (3) while under the influence of intoxicating [substance]." *Ray*, 54 N.C. App. at 474, 283 S.E.2d at 824; *see* N.C. Gen. Stat. § 20-138.1(a). Therefore, willfulness is not an element of the crime. This Court has held that

> [a]n indictment must set forth each of the essential elements of the offense. Allegations beyond the essential elements of the offense are irrelevant and may be treated as surplusage and disregarded when testing the sufficiency of the indictment. To require dismissal, any variance must be material and substantial and involve an essential element.

*State v. Pelham*, 164 N.C. App. 70, 79, 595 S.E.2d 197, 203 (citations omitted), *appeal dismissed and disc. review denied*, 359 N.C. 195, 608 S.E.2d 63 (2004). Here, the uniform citation for driving while impaired stated that "defendant did unlawfully and willfully operate a (motor) vehicle on a (street, highway) . . . . 5. While subject to an impairing substance. G.S. 20-138.1." As the inclusion of "willfully"

was "beyond the essential elements of the offense" we disregard this as "surplusage[.]" *See id.* The trial court did not err in denying defendant's requested instruction as to willfulness, as that instruction would not have been supported by law. *See Morgan,* 359 N.C. at 169, 604 S.E.2d at 909.

For the foregoing reasons, we find no error in defendant's trial.

NO ERROR.

Chief Judge MARTIN and Judge ERVIN concur.